## Commonwealth v. McClelland.

*Parent and child—Custody of children—Religious belief of parents—Protestant father and Catholic mother—Act of April 23, 1903, P. L. 274.*

Where two children eleven and twelve years old respectively have been, from their earliest recollection, attendants at a Protestant church and Sunday school, the court will not make an order placing them in a Roman Catholic institution at the instance of a relative of the mother, where it appears that the children had been placed by their father, a Protestant, under Protestant influences, after the insanity of his wife, a Catholic, and that the wife's relatives had made no objection to this for seven years; and this is the case although the husband before his marriage had entered into a written agreement with his wife that all children born of the marriage should be baptized and educated in the faith of the Roman Catholic Church.

Argued May 3, 1918. Appeal, No. 147, April T., 1918, from order of County Court of Allegheny Co., Juvenile Branch at No. 578, 1917, relating to the custody of Anna and Viola McClelland. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Petition for an order directing the custody of children. KENNEDY, J., filed the following opinion:

The testimony and record in this case show and we find the facts as follows:

That John H. McClelland, Protestant father, and Giles Quigley, Catholic mother, of the respondents, were married November 20, 1897, according to the rites of the Roman Catholic Church, by the Rev. S. A. Walsh at St. Paul's Roman Catholic Cathedral, Pittsburgh, Pa.

That at the time of the marriage the said J. H. McClelland stipulated in writing as follows:

"I, the undersigned not a member of the Catholic Church, wishing to contract marriage with Giles Quigley, a member of the Catholic Church, propose to do so

with the understanding that the marriage bond thus con-
tracted is indissoluble, except by death; and I promise
on my word of honor that Giles Quigley shall be per-
mitted to free exercise of the Roman Catholic religion,
and that all children of either sex, born of this marriage,
shall be baptized and educated in the faith and accord-
ing to the teachings of the Roman Catholic Church. I
furthermore promise that no other marriage ceremony
than that by the Catholic priest shall take place.

"(Signed) JOHN H. McCLELLAND.
"Signed in the presence of:
    "THOMAS QUINN,
    "ANNIE QUIGLEY,
        "this 20th day of November, 1897."

That the said Anna, one of the respondents, was born
February 27, 1905, and the said Viola (Mary), one of
the respondents, was born May 20, 1906, and that in pur-
suance of said stipulation, both of said respondents, when
a few months old, were baptized according to the rites of
the Roman Catholic Church.

That the father of said defendants, the said J. H. Mc-
Clelland, died in October, 1914, intestate, that the moth-
er is, and has been for ten or eleven years last past, in-
sane, and during the greater part of this period has been
and is now confined in an asylum.

That on the 13th day of December, 1907, at No. 7,
January Session, Quarter Sessions Court of Allegheny
County, Juvenile Branch, upon the petition of M. Alice
Carter, a probation officer of said court, setting forth,
among other things, that the said Anna and Viola Mc-
Clelland were dependent children, without proper pa-
rental care and guardianship, that the father drank,
and did not properly provide for them, that they were
without food or fire, they were returned to their parents
under the supervision of the probation officer.

That afterwards, on March 20, 1908, they were tem-
porarily committed to the City Home (Pittsburgh) at
Marshalsea, and, finally, on May 22, 1908, to the care of

their grandmother, Maria Jacoby, their father's mother, a Protestant with whom they have lived until August, 1917.

That on the 28th of August, 1917, at these proceedings, upon the petition of the said grandmother, setting forth that she was unable financially to care for said children and that none of their relatives were able to give them a home, they were by this court committed to the detention home of the court pending further disposition.

The record further shows that on September 17, 1917, they were by this court committed to their maternal aunt, Mrs. Grace Campbell, and that on October 18, 1917, the aunt returned the children to the juvenile court office, refusing to keep them longer, on which date they were again committed to the detention home, pending further disposition, and that finally, on November 1, 1917, after further hearing, they were committed to the Home Finding Department and, at their express request, the probation officer was instructed to place them in a Protestant home.

On the 21st of November, 1917, a petition was presented by Grace Campbell, their aunt, setting forth substantially the facts as herein narrated, as to the marriage, birth and baptism of the respondents, and praying the court to order the Home Finding Department of this court to place them in the care and custody of some person or persons having the same religious belief as their mother, Giles McClelland, their surviving parent, or with some association controlled by persons of such religious belief.

The main objection to such an appointment is the attitude of the children. They have from their earliest recollection been attendants at a Protestant Church and a Protestant Sunday school, and when questioned as to their wishes both express decided and apparently sincere refusal to be placed under the care of a person of the Catholic religion. They are bright, intelligent, well-grown, and unquestionably have formed a prejudice, of

course not founded upon any real knowledge of the subject, toward the church of their mother, so much so that a mere suggestion of placing them under its teachings arouses instantly in them, especially in the younger one, very marked antagonism, inclining the court to the belief that only by force can they be subjected to the prayer of the petition.

It seems to us that under the circumstances of this case, where these children, coming under the jurisdiction of this court when mere infants, were by it placed, with the consent of the father, who lived with the grandmother intermittently until his death in 1914, and without objection on the part of the mother's relatives (who are all of the Catholic religion) in the care and custody of a Protestant grandmother, and who without objection have been taught and reared in the atmosphere of a Protestant Church, until they have reached such an age (one in the 12th, the other in her 13th year) where they have fixed opinions of their own, where there has been utter neglect and abandonment upon the part of the petitioner and other maternal relatives of the children, that the interest and solicitation now shown by such relatives is somewhat tardy.

There was no reason why at the death of the father at least, this present request should not have been made. There was no reason why in their early infancy, when their minds could have been more readily moulded to the reception of the religion of their mother, there should not have been some action taken to this end.

It is not likely that the father would have raised any objection, and, if he had, his stipulation entered into at the time of the marriage would have been a sufficient answer.

But, after a lapse of all these years, the petitioner in this case, as she testified on the stand, having knowledge of all the facts, is it not too late to raise the question of the religious training of these children? Has the petitioner not tacitly acquiesced, standing as she says in

the opinion of her petition, in the place of the unfortunate mother, in the proceedings of this court to such an extent and for such a length of time that she is now estopped from asserting her alleged right to have the children placed under the teachings of a religion other than that they have been taught, with her knowledge, all their lives?

The father of the children was a Protestant. He was the natural guardian of the children while he lived, and if in permitting them to embrace the teachings of the Protestant religion he was guilty of a breach of his marriage agreement with his wife, was not that a matter between him and her at that time, and not now? She was just as competent then as now to interfere. The petitioner has not shown any authority of law to act for the mother; she is a volunteer, and if her voluntary action is in any force at this time, it would have been of equal force ten years since, or, at least, three years since, at the date of the death of the father.

The act of assembly governing cases such as this was in force at the time the first order of court was made. It provides that the courts having the custody of children shall place them, as far as possible, in the custody of persons having the same religious belief as the parents of the children.

In this case, however, the father was a Protestant when the first order was made, and if the order was, as was said before, in violation of the father's marriage agreement, that was a matter between him and the present petitioner, his wife's voluntary representative, at that time. Does the law intend, at the death of the father, his children having been placed during his lifetime, with his consent, in the custody of persons of his religious belief, that their custodial care shall then, at the expiration of seven years, be changed to that of the mother's belief? Would this be conducive to the best interests of the children? We think not, nor does the law intend that it shall be so.

The words "so far as possible" imply, because of their insertion in the act, that in some cases, owing to the circumstances, there may be such difficulties and peculiar situations, that to place the children as the act in the main directs, would be unreasonable, and not a benefit to them, which, after all, is the object of all juvenile court laws. These words imply that there is some discretion to be exercised by the court in placing children. If the act is intended to be mandatory in all instances, these words would have been omitted; on the other hand, the clear implication from the language is that so far as is reasonably possible the suggestions of the act as to the religious custody of children shall be obeyed.

We are, therefore, considering the age of the children, their hitherto religious training and environment, their decided antipathy to this proceeding, the laches of the petitioner until this time, the impossibility of complying with her prayer without resorting to harsh measures, the serious doubt whether the forcing upon the children religious training and teachings against their will, would not be productive of more harm than good, compelled to dismiss this petition.

And now, to wit, November 1, 1917, the above case called for hearing upon petition, and after a hearing and inquiry into the facts, the court determines that said children, Anna and Viola McClelland, are dependent, and that the child's own good and the interests of the State require, and it is therefore ordered, that said child be committed to the probation officer of this court, who has been by general order appointed director of the Allegheny County Home Finding Department, and to her successor or successors in office, county pay $3.50 per week each for board and clothing, county pay costs, child to remain in detention home until this order can be executed.

*Error assigned* was order of the court as above quoting it.

*Thomas L. Kane,* with him *Daniel C. Dillon,* for appellants.—Minors must be placed with persons of the same religious belief as the parents: Nicholson's App., 20 Pa. 50; McCann's App., 49 Pa. 304; Park's Est., 7 D. R. 700.

No printed brief for appellee.

PER CURIAM, July 10, 1918:

The opinion of the court below so fairly and conclusively answers the objection suggested in the assignment of error, that it is not necessary to present additional reasons in support of the conclusion he reached.

The order is affirmed.