Petition of Sulewski et al., for Adoption of Rose and Dolores Marcques.

302

Submitted March 19, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George W. Ellis,* and with him *Richard Henry Klein,* for appellant.

*Charles C. Lark,* and with him *William I. Troutman,* for appellee.

OPINION BY KELLER, J., July 13, 1934:

These appeals, relating (1) to adoption proceedings in the orphans' court and (2) to habeas corpus proceedings in the common pleas, are concerned with the same matters of fact and can best be considered in one opinion.

On March 27, 1933, Martin Sulewski and Mary Sulewski, his wife, presented their petition to the Orphans' Court of Northumberland County, asking for the adoption of Rose Marcques and Dolores Marcques, minor children aged eleven and ten years respectively. The petition set forth that the mother of the children, Susan Santos, formerly Susan Marcques, resided at 702 Court Street, Scranton, Pa.; that the father Al-

varo Marcques, resided in the State of California but his exact address was unknown; his last known address being 225 T Street, Sacramento, Cal. The petition also averred that "the consent of the parents of the said minor children is unnecessary in this case for the reason that said parents have abandoned said minor children." It further averred that the children had been left in the custody of Joseph Avelino Rodiques and Viola Rodiques of the Borough of Centralia, Schuylkill County, Pa., sometime in the year 1925, who, on June 30, 1925, placed said children in the Sylvan Heights Home at Harrisburg, Pa., where they remained until December 7, 1925 when the petitioners obtained their custody from said Home and have had them in their custody and control, and have supported, maintained and cared for them ever since.

The court fixed April 10, 1933 at 10:00 o'clock A. M. for the hearing and ordered that the adopting parents and the children to be adopted be present. It further ordered that notice of said hearing be given the natural mother, Susan Santos, 702 Court Street, Scranton, Pa., by registered mail, and also notice be given the natural father by registered mail at his last known place of residence in the State of California.

Notwithstanding the explicit direction in the order that the petitioners should give notice of the hearing to Susan Santos, the mother of the children, by registered mail addressed to 702 Court Street, Scranton, Pa., no notice was given her. This was a grave dereliction, which would have invalidated the proceedings, if the mother had not appeared at the hearing. The averment in the petition that the parents had abandoned the children did not justify the failure to give notice of the hearing to the mother, as the court had ordered. It was for the court to determine whether the parents had abandoned the children, and that, in consequence, their consent to the adoption was not

necessary. The petitioners could not assume it. The mother had a right to be heard on the matter, and the order of the court that she be given notice was eminently proper. It should have been complied with. Fortunately the mother, Susan Santos, heard of the proceedings from some other source, and was present at the hearing, so the failure of the petitioners to obey the order of the court as respects giving her notice may be overlooked.

It developed at the hearing that the move to adopt the children was brought about by the demands of the mother, Susan Santos, for the possession of her children. Before she approached the Sulewskis and made demand for their custody no steps looking to the adoption of the children had been taken by the petitioners. Mrs. Santos strenuously denied that she had abandoned the children. Her story was, in substance, that three weeks after she was deserted by her husband, who left for California in 1925, she went to Yonkers, N. Y. to work, taking with her her baby; but before leaving made arrangements with Joe Avalino Rodiques, who had boarded with her before his marriage, and who owed her money, that he and his wife should take care of the two older children, Rose and Dolores, until she was able to care for them. She worked in a restaurant at Yonkers for two weeks; then went to Lowell, Mass., where she worked in a factory for four months; then she came to Palmerton, Pa., where she ran a boarding house, —which she still conducts—, and subsequently, after her first husband had obtained a divorce, married her present husband. While in Lowell, she corresponded with Rodiques, who told her he had the children and not to worry about them. When she got to Palmerton she wrote to Rodiques, and he came, but did not bring the children. She told him she was ready for the children and asked why he had not brought them; and he then told her he did not

have them; that her husband had sent the money for them and the children had been sent out to him. She wrote to her husband's cousin, Manuel Marcques, to find out whether they were with their father, and how they were, but received no reply, because he had gone to Portugal. When he came back, she saw him and was told by him that he had written to the father and learned that he did not have the children. Notwithstanding her efforts to do so, she was unable to find out where the girls were until about six months before these adoption proceedings were begun, when, by a ruse, while she was in a hospital following an operation, she learned that Rodiques had placed the children in a Home and that Mr. Sulewski, the petitioner, had taken them from the Home and had them in his care and custody. Rodiques called to see her, told her who had the girls, and two hours later Mr. Sulewski came and showed her the girls' pictures and promised to let her see them if she would not tell them she was their mother. Even then she did not know where they lived, but they finally told her, and it was her efforts to obtain the children which brought about the present adoption proceedings.

Rodiques denied that she had left the girls with him. He said he had found Rose in the street after her mother had gone away and had taken her to his home; that a woman brought Dolores to his place, and walked away after putting the child inside the gate; that he kept them for a little over two months and then put them in the Sylvan Heights Home. He denied corresponding with the mother, or telling her that he had sent the children to their father. He said he saw her in Palmerton in 1925 and told her the children were in a Home in Harrisburg. He subsequently said he was in Palmerton just once and that was in 1928. While his testimony impresses us as contradictory, evasive and lacking in frankness, if believed it

would support a finding that the children had been abandoned by the mother. On the other hand, her testimony, if believed, would not warrant a finding that she had abandoned the children. Her story is wholly inconsistent with an abandonment. She was supported in some parts of her testimony by Manuel Marcques and several other witnesses.

The Act of April 4, 1925, P. L. 127, makes the consent of the following persons *necessary* to sustain a decree of adoption: "(a) of the person proposed to be adopted, if over twelve years of age ...... (c) of the parents, or surviving parent, of the person proposed to be adopted ...... but the consent of a parent who has ...... abandoned the child is unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, *in which case such court or judge shall so find as a fact.*" (italics supplied).

At the time of the hearing in the adoption proceedings held on April 28, 1933 Rose Marcques was not quite twelve years old. She became twelve on the 28th of May, 1933. Dolores Marcques was ten years old on February 6, 1933. It was not necessary at that time to secure their consent, but the consent of the parents was absolutely necessary unless they had abandoned the children, and that abandonment had to be proved to the satisfaction of the court or judge hearing the petition, and the court or judge had to make a specific finding of such abandonment by the parents, as a fact, before it could enter a valid decree of adoption in the case. If one of the parents abandoned the children and the other did not, the consent of the parent who had not abandoned them was an absolute prerequisite before a decree of adoption could be made.

In this case the court made no specific finding as to whether either the father or the mother of these chil-

dren, or both of them, had abandoned them. The mother was present in court objecting to and protesting against the adoption. No valid decree of adoption could be made unless, following the hearing, the court found that the children had been abandoned by both parents. No such finding was made in this case. It is true that in the decree of the court the general statement is made: "The court is satisfied that the statements made in the petition are true, and that the welfare of the said Rose Marcques and Dolores Marcques will be promoted by the adoption as prayed for," but the decree also sets forth that the facts contained in the report of the investigation made by the county detective of Northumberland County and the State Police were adopted as the finding of facts by the court, and in that report the investigators included, without denial, the statement of the mother of the children at somewhat more length than it appears in this opinion; and, as before said, her statement, if believed, negatived any abandonment of these children by her.

We are of the opinion that the findings of fact contained in the decree of the court below are insufficient to justify the decree entered; that as it appeared that the mother, Susan Santos, not only had not consented to the adoption of her children, but strenuously opposed the same, no decree of adoption could be made without a specific finding by the court not only that the father, Alvaro Marcques, had abandoned the children, but also that the mother, now Susan Santos, had abandoned the children; and in the absence of any such specific finding the decree of the court must be reversed. The older daughter, Rose Marcques, is now more than twelve years old, so that in any subsequent proceedings her consent to the adoption will have to be obtained.

Unless the requisite consents declared by the act of assembly to be necessary are obtained, or there is a

specific finding that both the father and the mother of the children have abandoned them, a decree of adoption cannot be entered. The welfare of the children is not sufficient ground for the decree of adoption, unless based on the necessary consent of the parents, or on the distinct finding that the parent or parents not consenting have abandoned the children. The fact that the adoption asked for may be advantageous to the children and for their material welfare, is not to be considered by the court until the necessary prerequisites for such action exist.

This disposes of the appeal from the decree of adoption. The other appeal grows out of the habeas corpus proceedings brought by the mother for the custody of the two children. In these proceedings the welfare and interest of the children is the principal matter to be considered: Com. v. Daven, 298 Pa. 416, 148 A. 524. It does not follow that because the decree of adoption has been reversed the custody of the children must be given to the appellant, their mother: Darlington's Adoption, 69 Pa. Superior Ct. 281. The court decided that it would be for the best interests of the children that they stay with Mr. and Mrs. Sulewski. For nearly nine years they have had the children in their care, custody and control. Whatever parental care the children have received, of which they have any recollection, has been furnished by Mr. and Mrs. Sulewski. They know no other parents. They are living in a good home, in the best of surroundings, with people who have acted towards them, as father and mother and who are in every way desirable as custodians and capable of looking after their interest and welfare. One of the children is now over twelve years old and of an age when she would be entitled, if she were an orphan, to name her own guardian. The other one will be twelve years old next February. The court below on due and careful

consideration of the matter was of the opinion that it is for the best interest and welfare of the children that they remain with the persons with whom they have lived since December, 1925. Without detailing at length the reasons which may have led the court to the conclusion that the welfare of the children would be best subserved by keeping them in their present home rather than turning them over to their mother, whom they scarcely know, we deem it sufficient to sustain the finding of the court. No good purpose would be served by reciting at length the facts in evidence which support the court below in its decision that it would not be for the best interests of the children to deliver them into the custody of their mother; that the surroundings in which they would live with their mother would not be as conducive to their interest and welfare as those in which they are now living.

The Sulewskis had no part in the deception, if any, practiced on Mrs. Santos.

The Act of July 11, 1917, P. L. 817, requires this court in appeals in this class of cases to "consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong." The law does not require that the custody of a child shall in every instance be given to one of its parents. If it is for the best interests and welfare of the child that it be left in the custody of a third person the court may so order: Com. ex rel. v. Faxstein, 84 Pa. Superior Ct. 243; Com. ex rel. v. Hoffman, 91 Pa. Superior Ct. 213; Com. v. Mauch, 91 Pa. Superior Ct. 220. See also, Com. ex rel. v. Blatt, 165 Pa. 213, 30 A. 674; Com. v. Strickland, 27 Pa. Superior Ct. 309; Herr v. Herr, 15 York 198; Stambaugh v. Glatfelter, 18 York 193. The law does not require that the custody of the child be committed *to any particular person:* Com. v. Addicks, 5 Binn.

520, 521; Com. ex rel. v. Demott, 64 Pa. 305. As was well said by the late Judge JOHN B. McPHERSON in Com. ex rel. v. Wise, 3 Dist. 289, in every such case there are three interests to be considered, the parents, the State, the child; and of these three, the interest of the child is the most important. The Act of June 26, 1895, P. L. 316, did not change the law in this respect for it recognizes, in effect, in section 2 that the court is not *obliged* to award the custody of the child to either parent.

On full consideration, our judgment in the matter agrees with that of the court below, that in this case the welfare and interest of the children will be promoted by leaving them where they have been for the last eight and a half years.

The same judge, who heard the evidence in the adoption proceedings, decided the habeas corpus proceedings. We will not reverse merely because he did not require the evidence to be taken all over again.

Appeal No. 59 October Term, 1934—The decree of adoption is reversed and vacated, and the record is remitted to the court below with directions to refuse the adoption and dismiss the petition unless the court specifically find from the evidence that both parents have abandoned said children. Appellees to pay the costs.

Appeal No. 60 October Term, 1934—The order is affirmed at the costs of the appellant.