Commonwealth ex rel. Settlemire *v.* Stephens et al., Appellants.

Submitted April 27, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harold Kaminsky,* for appellants.

*Weimer & Bennett,* for appellees.

OPINION BY KELLER, P. J., July 15, 1937:

We have given this case, involving the custody of a minor child, the careful consideration that is required of us under the Act of July 11, 1917, P. L. 817, 12 PS sec. 1874, and, having in mind the rule that the welfare and interest of the child is the decisive factor, we are of opinion that the matter was rightly decided in the court below.

The child in question, when a baby only two months old, was brought to the home of the relators by his mother, one of the appellants, who asked them to keep and adopt him because she was unable to provide for him. She was then less than nineteen years old and had had two illegitimate children by different fathers. She had no place or means to keep and maintain the second child, this boy. The relators were childless. They took the baby and have cared for him as if he were their own. They set about to adopt him, but were informed by the justice of the peace whom they consulted that the mother could not legally consent to the adoption of the child until she became of age, and they took no further steps by way of adoption, believing that when the mother came of age the matter would be satisfactorily arranged. The mother had accompanied them to the office of the justice of the peace and was willing that the child should be adopted by the relators. Her relinquishment of the child was, at the time, intended to be final and complete.

The child when received by relators was sickly and in poor health. His foster mother nursed him back to health, and both the relators have given him the best of care and an abundant measure of love and affection, —

the same as if he had been their own child. They are anxious to have and keep him.

Three years after the child was left with the relators, the mother married the other appellant. A year and four months thereafter, the mother appeared at the home of the relators and secured the temporary possession of the child on the pretext that she wanted to have his photograph taken. She took him to the home where she and her husband and her other child reside and kept him there until ordered by the court to restore him to the relators.

The mother's reputation prior to her marriage was not good. Since her marriage she has been living a decent life with her husband. But the surroundings there are not as favorable to the child as in the home of the relators, and we agree with the learned president judge of the court below, who saw the parties and heard them testify, that it will be for the best interest and welfare of the child that his foster parents who gave him practically all the care and attention that he received in the first four and a half years of his life should continue to have his care and custody. They assumed the burden of his care and maintenance at a time when the mother had no place to keep him and was not only willing but anxious that they should have him, and have bestowed on him the love and affection of real parents. His surroundings, in their home, are excellent — better than in the home of his natural mother. The relators are better able financially to look after and provide for him than the natural mother. While the intended relinquishment of the child by the natural mother in 1932 would not, in the circumstances, be binding on her, if it were for the welfare and interest of the child that she should have his custody and possession, it is a matter to be taken into consideration; and when it appears that his welfare and interest will be best served by his remaining with the foster parents

who have reared him almost since his birth, it is of weight and importance.

The order of the court below is affirmed at the costs of the appellants.