## Commonwealth ex rel. Sutton v. Snyder et ux.

Hon. *Frank P. McCluskey*, for petitioner.
*E. J. Fox, Jr.*, of *Fox & Oldt*, for respondents.

BARTHOLD, J., December 10, 1945.—This case comes before the court upon a writ of habeas corpus. Relator's petition for the writ represents inter alia:

"That your petitioner is a resident of Baltimore, Maryland, and is the mother of Elizabeth May Sutton, a minor.

"That said Elizabeth May Sutton was born at Easton Hospital, Easton, Pennsylvania, February 13, 1930.

"That the father's name of said Elizabeth May Sutton was Joseph Sutton. . . . now deceased.

"That when said Elizabeth May Sutton was between five and six years of age, over the objection of your petitioner, she was forcibly taken from her home and your petitioner's custody by Joseph Sutton and his brother, Edward Sutton, and placed in the custody of James Snyder and Emily Snyder where she has been ever since.

"That your petitioner alleges that the said Elizabeth May Sutton is restrained of her liberty. . . .

"That your petitioner is entitled to the custody of her minor child, Elizabeth May Sutton."

The prayer of the petition is as follows:

"Your petitioner, therefore, prays your honorable court to grant a writ of habeas corpus agreeable to the act of assembly in such case made and provided upon James Snyder and Emily Snyder commanding them to bring before your honorable court the body of said Elizabeth May Sutton and show cause, if any they have, why the said Elizabeth May Sutton should not be released of said illegal restraint and why she should not be delivered into the custody of your petitioner."

On the day set for hearing, respondents were present in court with Elizabeth May Sutton. Petitioner was the sole witness in support of the writ. She testified, inter alia, as follows: Elizabeth, her daughter, was born at the Easton Hospital on February 13, 1930. During the daughter's early childhood both petitioner and her husband on numerous occasions left her in the care of respondents. When domestic difficulties arose between herself and husband, the daughter was left with respondents on a more or less permanent basis, and later, when it appeared that petitioner was not properly caring for her daughter, she was committed by the court to the care of respondents. Approximately 10 years ago petitioner left her husband and went to live in Harrisburg and then

in Baltimore, where she resided until her recent return to Easton. During this period petitioner made no attempt to see her daughter, giving as a reason the fact that the court had ordered her to stay away. When confronted with a decree of adoption dated September 27, 1943, whereby Margaret E. Sutton and Edward N. Sutton became the adopting parents of her daughter, she testified that she did not know of the adoption proceeding inasmuch as she had never been notified of it. Edward N. Sutton is a brother of Joseph Sutton, deceased, natural father of Elizabeth May Sutton, and Margaret E. Sutton is the daughter of respondents.

Counsel for respondents offered in evidence the decree of adoption and called the daughter, now almost 16 years of age, as a witness. She testified that she lives at 46 South Front Street, Easton, Pa., with respondents, because of the illness of her adopting-mother; that respondents lived next door to the adopting parents until about four months ago; that while she lives with respondents, she occasionally stays with her adopting-mother. She testified further that she knows that relator is her natural mother; that she does not wish to spend any time with her and will accept responsibility for her statement that she does not want to see her natural mother or have anything to do with her.

The decree of adoption is as follows:

"And now, this 27th day of September, 1943 upon a hearing of the Petition filed in the above stated matter and the taking of testimony thereon it appears to the Court that the statements made in the petition are true and that the welfare of the said Elizabeth Mae Sutton will be promoted by such adoption and that all the requirements of The Adoption Act of April 4, 1925, P. L. 127, its supplements and amendments have

been complied with it is hereby ordered and decreed that Elizabeth Mae Sutton the natural child of Joseph Sutton, now deceased and Minnie Sutton, who abandoned her said minor child approximately seven years preceding this date and whose present whereabouts are unknown, shall be adopted by Margaret E. Sutton and Edward N. Sutton residing at 44 South Front Street, Easton, Pennsylvania and shall have all the rights of a child and heir of such adopting parents, and be subject to the duties of such child."

The above decree of adoption unappealed from conclusively binds petitioner. Based as it is upon the finding that the natural father is dead and that the natural mother has abandoned the child, the decree is presumed to be based on evidence and will not be set aside on the ground of lack of jurisdiction where the proceedings were before a proper tribunal and no appeal was taken from the decree: Helen Frances Young's Adoption, 259 Pa. 573, 576. Consent of a parent who has abandoned the child is not necessary to adoption where the court finds abandonment as a fact: Weinbach's Appeal, 316 Pa. 333; Darlington's Adoption, 69 Pa. Superior Ct. 281, 285; Petition of Sulewski et al., 113 Pa. Superior Ct. 301.

The above decree of adoption cannot be collaterally attacked. A decree of adoption entered pursuant to statutory requirements is a valid and binding judgment immune from collateral attack: Helen Frances Young's Adoption (supra) ; In re Caldwell's Will, 18 Phila. 51. Counsel for petitioner concedes this proposition of law but contends that the privilege of visitation may be granted to the natural mother under the present writ of habeas corpus. Counsel for respondents contends that the decree of adoption precludes the grant of such privilege, especially where the adopting parents and the child herself object.

We are of the opinion that the decree of adoption precludes any right to visitations by petitioner. The adopting parents can permit visitations if they choose to do so, but the court, in view of the adoption decree, is without power to order visitations by the natural mother against the consent of the adopting parents and the child. The decree of adoption follows the words of the Act of April 4, 1925, P. L. 127, sec. 4, 1 PS §4, and directs that Elizabeth May Sutton "shall have all the rights of a child and heir of such adopting parents, and be subject to the duties of such child." The decree, judicially evidencing the act of adoption, created the status of parent and child: Crossley's Estate, 135 Pa. Superior Ct. 524, 527; Wessman's Estate, 29 Northampton 242. "By adoption a new status is created which cannot be stricken down because of regret of a parent who consented thereto:" Helen Frances Young's Adoption (supra); Batton's Adoption, 3 D. & C. 113; Kutz's Adoption, 11 D. & C. 766; In Re Adoption Maloney, 22 Luz. 405. The court cannot annex any conditions to a decree of adoption. The adopted child becomes subject to the authority of the parent without interference from other persons: In re Irwin, 7 W. N. C. 225. See also Commonwealth v. Phillips, 20 Lack. 316, 15 Del. Co. 197, in which case it was decided that where a child has been formally adopted by the paternal grandmother, her status, to all legal intents and purposes, is that of parent, having custody and entire control of the child, and the court has no power to order that the maternal grandmother may visit him or occasionally have him in her custody.

Under the above decisions and on the record as now constituted, we are without power to modify the decree of adoption by now reserving rights of visitation. The grant of any such rights or privileges would be disruptive of the new status created by the decree of

adoption and inimical to the best interests of the child, where, as here, visitations are not desired either by the child or the adopting parents.

As we view the case, petitioner is attempting to use the writ of habeas corpus to revoke or modify the final decree of adoption, when the appropriate remedy is a petition to vacate or modify the decree. Petitioner does not ask the court to take custody of the child from respondents or from the adopting parents, on the ground that they are unfit or unable to discharge the duties assumed by them. See Turner's Adoption, 30 Del. Co. 65. Neither the fitness of the adopting parents nor their ability to discharge the duties assumed by them is called into question, nor is there any suggestion that there was any impropriety in permitting the child to stay with respondents. Petitioner's whole case is based upon her allegation and testimony that she was not notified of the adoption proceedings and did not in fact abandon the child. If relator is in a position to establish these facts, her remedy is the vacation of the decree of adoption upon proper petition and proof. In our opinion the writ of habeas corpus cannot be used as a substitute for such proceeding to vacate the decree of adoption. The use of the writ of habeas corpus for such purpose would in effect be a collateral attack upon a valid and binding judgment of this court. If petitioner is successful in vacating the decree of adoption, the writ of habeas corpus would then be available to her as the proper method for determining the question of the child's custody.

For the reasons hereinabove given, petitioner's requests must be denied.

And now, December 10, 1945, the writ of habeas corpus heretofore issued upon the petition of Minnie Sutton is hereby dismissed at the cost of relator.