## Oelberman Adoption Case.

408

Argued March 21, 1950. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*William T. Davis,* with him *Boulton, Nevling & Davis,* for foster parents.

*E. T. Kelley,* with him *Kelley & Johnston,* for mother of child.

OPINION BY RHODES, P. J., July 20, 1950:

These appeals, relating (1) to adoption proceedings in the Orphans' Court of Clearfield County, and (2) to habeas corpus proceedings in the Court of Common Pleas of Clearfield County, arise from the same facts and can be considered in one opinion. It has been stipulated and agreed that both appeals be heard together, and that the parties thereto submit to the jurisdiction of this Court.

On March 14, 1949, Andrew Slotter and Marjorie Slotter, his wife, presented a petition to the Orphans' Court of Clearfield County for the adoption of Saundra Patricia Oelberman who was born on August 21, 1948, being an illegitimate child of Patricia Oelberman. The petition for adoption set forth that custody of the child had been given to the petitioners by the mother when it was eight days old; that petitioners have maintained and supported the child and have had complete and

continuous custody. of it since August 29, 1948; and that Patricia Oelberman gave her written consent for such adoption which was attached as an exhibit. The consent was dated August 29, 1948.

On March 25, 1949, a petition was presented to the Court of Common Pleas of Clearfield County by Patricia Oelberman, the mother, for a writ of habeas corpus to obtain the custody of the child. George H. Wood, Jr., as father, joined in the petition. The petition set forth, inter alia, that the said Patricia Oelberman and the said George H. Wood, Jr., had decided to marry, and therefore desired that the child be returned to them.

On April 22, 1949, a hearing was held, and there is a single record of the testimony pertinent to both petitions. The same judge heard and decided both cases.

On June 27, 1949, the Court of Common Pleas of Clearfield County refused relatrix' petition for writ of habeas corpus and continued the custody of the child with the foster parents, the respondents; and on June 29, 1949, the Orphans' Court of Clearfield County refused a decree of adoption. Relatrix, the mother of the child, has appealed from the order of the court of common pleas in the habeas corpus proceeding (No. 1, October Term, 1950), and the foster parents have appealed from the decree of the orphans' court refusing their petition for the adoption of the minor child (No. 15, October Term, 1950).

We shall consider first the appeal from the decree in the adoption proceeding.

The record discloses that the mother, Patricia Oelberman, is a graduate nurse by profession, and that she lived in Philipsburg, Pennsylvania, at the time the child was conceived.. It is conceded that the father of the child is George H. Wood, Jr.; he has admitted the paternity of the child. When the mother of the child

found that she was pregnant she decided to go to Philadelphia in order that her mother, who was suffering from a heart condition, might not become aware of the situation; the latter died March 10, 1948, while Patricia was in Detroit, Michigan. Cf. *Weinbach's Appeal*, 316 Pa. 333, 338, 175 A. 500. She went to Philadelphia on April 15, 1948, and obtained employment with an organization known as "Sheltering Arms," which is an institution for single mothers. There she served as a night nurse. Having learned of Patricia Oelberman's condition and being desirous of adopting a child, petitioners contacted her in Philadelphia. On August 29, 1948, eight days after the child was born, it was given to petitioners by the mother who intended that it should be adopted by them. The child has continued with petitioners since that time. The mother has occasionally seen the child since petitioners received it. These calls in so far as the public was concerned were made secretly. Before the birth of the child, the mother, on July 12, 1948, wrote to petitioners: "As I said before—the baby must never know of me," and in a letter of August 1, 1948, she assured them that there would be no change in her plans. After petitioners received the child, the mother executed a consent agreeing to the adoption of the child by petitioners. Although this was dated August 29, 1948, the mother testified that it was executed on or about September 8, 1948. At that time the mother was 21 years of age. On February 15, 1949, the mother and the putative father called on petitioners, sought to withdraw the consent and obtain possession of the child; the mother attempted to remove the child from petitioners' home. The mother and the putative father were married on April 19, 1949, three days before the hearing. The putative father had not seen the child prior to the date of the hearing, and had no apparent interest in her until February 15, 1949.

It is conceded that petitioners have properly cared for the child, and that they are proper and fit persons to have custody of it. The mother voluntarily, after extended consideration, relinquished custody and parted with the possession of the child. She came to this decision more than four months prior to the birth of the child, and she continued in the course which she had adopted for more than five months thereafter. If petitioners had not taken the child, she proposed to place it with an agency in Philadelphia. The record clearly discloses that the mother by word and by conduct evidenced "a settled purpose to forego all parental duties and relinquish all parental claims" to the child. See *Hazuka's Case*, 345 Pa. 432, 435, 29 A. 2d 88; *Schwab Adoption Case*, 355 Pa. 534, 538, 50 A. 2d 504. This continued without interruption until February 15, 1949.

The orphans' court found that the abandonment of the child had not continued for a period of six months,[1] and in the absence of necessary consents refused the decree of adoption, although of the opinion that the welfare of the child required that she remain with petitioners.

Adoption in Pennsylvania exists by virtue of statute. Adoption was not a common law act, and, being in derogation of common law, statutory provisions with respect thereto must be strictly construed and complied with. *Fisher v. Robison*, 329 Pa. 305, 308, 198 A. 81; *Dougherty Adoption Case*, 358 Pa. 620, 623, 58 A. 2d 77. The Adoption Act of April 4, 1925, P.L. 127, as amended by the Acts of April 26, 1929, P.L. 822, June 5, 1941, P.L. 93, July 2, 1941, P.L. 229, and June 30, 1947, P.L. 1180, 1 PS § 1 et seq., provides for

---

[1] Abandonment is a matter largely of intention to be ascertained from the circumstances, and whether or not a child has been abandoned is a question of fact. *Hazuka's Case*, 345 Pa. 432, 435, 29 A. 2d 88.

adoption and prescribes the procedure. Section 2 (c) of the Amendatory Act of June 30, 1947, P.L. 1180, 1 PS § 2, provides, inter alia, as follows: "The consent of a parent . . . who has abandoned the child, for a period of at least six months, shall be unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact; . . ."

This case is before us on a broad certiorari. *Diana Adoption Case,* 165 Pa. Superior Ct. 12, 18, 67 A. 2d 751. On the record the decree of the court below dismissing the petition for adoption will be affirmed. Under the Adoption Act of 1925, as amended, the welfare of the child is weighed only after the necessary consents have already been given or forfeited. *Schwab Adoption Case,* supra, 355 Pa. 534, 540, 541, 50 A. 2d 504; *Susko Adoption Case,* 363 Pa. 78, 81, 82, 69 A. 2d 132. In the Susko Adoption Case, a consent was signed by the mother of the child on March 27, 1948, and the petition for adoption was filed on May 3, 1948. In affirming the decree of the lower court refusing to permit the adoption, the Supreme Court said (page 83 of 363 Pa., page 135 of 69 A. 2d) : "Section 3 of the Act gives the trial judge discretion to require the presence of the natural parent or parents at the hearing on the petition for adoption where a formal consent has been executed. This implies that it is not too late even then to withdraw a previously given consent for adoption. If there is no voluntary consent at that time, the requirements of the Adoption Act have not been met."

It appears that the child was delivered to petitioners on August 29, 1948, and that demand was made by the mother and the putative father to recover the child on February 15, 1949. While the written consent signed by the mother is dated August 29, 1948, she testified that it was actually signed on September 6 or September 8, 1948. The court below found that the

demand had been made and the consent revoked on February 15, 1949, which is less than the six-month period of abandonment required by the Act. At the hearing both parents testified against the adoption. It follows that there has not been a compliance with the requirements of the Act.

In the absence of abandonment of the child for a period of six months within the meaning of the statute, the refusal of the natural parents to consent to the adoption prevents the granting of the petition. The evidence supports the findings, and there was no abuse of discretion on the part of the trial judge.

The other appeal, No. 1, October Term, 1950, arises out of the habeas corpus proceeding brought by the mother for the custody of the child.

As a general rule the mother has a prima facie right to the custody, care, and companionship of a child of tender years; this is so even though the child is born out of lawful wedlock. *Com. ex rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 74 A. 2d 668. The right is not absolute but must yield to the best interest and welfare of the child, and such right may be lost by her conduct. *Latney's Appeal,* 146 Pa. Superior Ct. 20, 21 A. 2d 521. We agree with the court below, after a careful consideration of all the evidence, that the best interest and welfare of the child would be served by leaving it with respondents. Although a child of two years of age or under will form new attachments quickly if treated kindly by those into whose care it is given, an appraisal of all the circumstances in this case leads us to conclude that the welfare of the child will be promoted by allowing it to remain with respondents who have stood in the parental relationship and who have cared for it since a few days after birth. See *Com. ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 97, 66 A. 2d 300. It does not follow that because a decree of adoption has been refused the

custody of the child must be given to relatrix. *Marcques Adoption Case*, 113 Pa. Superior Ct. 301, 309, 173 A. 747. Relatrix acted in pursuance of a well formed intent. On July 12, 1948, some weeks before the birth of the child, relatrix wrote to respondents as follows: "When I give you the baby—it will be because I think you can give it a good home and hope, tho, that it will make you happy. It will be yours to raise as you see fit with no interference from me—ever."

When it appears that the child's welfare and interest will be best served by her remaining with the foster parents who have reared her almost since her birth, the intended relinquishment of the child by the mother is of weight and importance. *Com. ex rel. Settlemire v. Stephens*, 127 Pa. Superior Ct. 188, 193 A. 80.

The question of religion has been injected into the controversy, and it was one of the things upon which the mother and the putative father could not agree. Religion is an important matter and should be given consideration, but it does not determine the right to custody. Custody must be viewed with relation to the happiness, training, development, and moral, physical, and spiritual well-being of the infant. Unquestionably, the child will be given religious training by respondents, and its home will not be devoid of a religious atmosphere.

The court below in its opinion has said: "Mrs. Wood [relatrix] testified that after she became pregnant, she continued to have dates with other men, one of whom was a brother of Mrs. Slotter [one of respondents]. It was through this brother [Steve Gunta] that the Slotters learned of her difficulty; . . . Having gone to Philadelphia to conceal her pregnancy; having continued dates with other men, and her interest in Mrs. Slotter's brother, as shown by Mrs. Slotter's testimony, and her own letters; her determination not to come back to Philipsburg with the child; and then marrying

the father of the child almost a year and a half after they first discussed marriage, would indicate that Mrs. Wood has difficulty in arriving at a conclusion and can easily be persuaded one way or the other. No good purpose would be served in setting out in detail the facts that caused us to arrive at the opinion that both the mother and father of this child were interested in other men and women, until some time after the child was born. . . . while all parties have the right to live down their foolish actions, the prior course of conduct on the part of the mother [relatrix] would indicate an uncertain and foolish nature, which would not justify removing the child from a home where it is admittedly well taken care of, . . ."

In a case of this type, we are not limited to the consideration of the record as on certiorari. The Act of July 11, 1917, P.L. 817, § 1, 12 PS § 1874, provides that any party aggrieved by any order in any habeas corpus proceeding involving the custody of children may appeal to this Court "who shall consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong."

We are not unmindful that the court below had the opportunity of seeing and hearing the witnesses in this case. We also recognize that weight is to be given to the fact that the parties were known to the lower court, and that it has had a better opportunity to pass upon their ability and character than we have. *Com. ex rel. Knouse v. Knouse,* 146 Pa. Superior Ct. 396, 398, 399, 22 A. 2d 618.

Having reviewed the proceedings as provided by the Act of July 11, 1917, P.L. 817, § 1, 12 PS § 1874, we agree with the conclusions of the court below. Therefore we will not direct the separation of the child from its foster parents, the respondents, or its removal from

their care and devotion to expose it to the questionable penitence of the relatrix. See *Com. ex rel. Piper v. Edberg*, 346 Pa. 512, 518, 31 A. 2d 84; *Davies Adoption Case*, 353 Pa. 579, 588, 46 A. 2d 252.

Appeal No. 15, October Term, 1950—The decree of the orphans' court denying the petition for adoption is affirmed, at the cost of appellants.

Appeal No. 1, October Term, 1950—The order of the court of common pleas is affirmed, at the cost of appellant.