## MARY E. BAILEY v. HARRY MARS ET AL.

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 87169

Memorandum filed March 30, 1951.

*Joseph J. Fauliso*, of Hartford, for the Plaintiff.

*Nathan Aaron*, of Hartford, and *James T. Mather*, of Bristol, for the Defendants.

COMLEY, J. The fundamental question in this case is whether the mother of an illegitimate child who has entered into an agreement of adoption may withdraw her consent at any time before a decree of adoption has been entered. The overwhelming weight of authority is to the effect that such consent may be withdrawn. "Consent may be withdrawn at any time before adoption, even though given in writing, and accompanied by a transfer of the custody of the child, and even though the natural parent had abandoned the child; and an adoption based upon consent that has been withdrawn is void." 2 C. J. S. 386, 21 (4) ; see also *Sulewski's Petition*, 113 Pa. Super. 301; *William* v. *Capparelli*, 180 Ore. 41; *In re Adoption of Anderson*, 189 Minn. 85; *In re Nelms*, 153 Wash. 242; *French* v. *Catholic Community League*, 69 Ohio App. 442; *In re Cohen's Adoption*, 279 N. Y. S. 427; *In re Burke's Adoption*, 60 N. Y. S. 2d 421.

Various reasons of a legalistic nature are given for this rule but, when all is said and done, it rests upon considerations that lie deep in human nature. A contract of adoption deals primarily with human rights and human emotions and only incidentally with property rights. The rule undoubtedly rests upon the reluctance of the courts to take away a child from its mother when consent, usually given under the stress of immediate necessities and pressure, has given way to different feelings upon cooler reflection. This is well illustrated by the facts in the present case.

In the autumn of 1948 the plaintiff discovered that she was pregnant. The father was an older married man from whom she could expect no substantial assistance. On January 29, 1949, she visited the office of Dr. Sylvia Weiner, a physician with considerable obstetrical practice, whose name the plaintiff took from the telephone book. At this visit the plaintiff was in an emotionally disturbed condition, greatly concerned over her own future and that of the coming child. Dr. Weiner is a strong-minded and forceful person, quite the opposite of the plaintiff. The plaintiff made several inquiries about what could

be done with the child. Dr. Weiner immediately suggested adoption and said that she could arrange it and that all expenses would be paid. The plaintiff again visited Dr. Weiner on April 9, 1949, and the question of adoption was again discussed, as it was on seven or eight more prenatal visits. At all times the doctor urged adoption as the best method of disposing of the child.

Dr. Weiner had met the defendants, who became the adoptive parents, some time before and had told them that she would try to find a baby for them to adopt. Early in May she informed the defendants that she had such a child. They went to see Attorney Nathan Aaron, whose office was near that of Dr. Weiner, and retained him to handle the adoption. It was agreed that the defendants should pay Mr. Aaron $400, out of which he was to pay the hospital expenses and probate charges and keep the balance as his fee. The defendants also agreed to pay Dr. Weiner $250 for her medical services. On May 13, 1949, the plaintiff saw Mr. Aaron at his office. He explained the nature of adoption proceedings, showed her the blank forms which would be used and asked her to come back after the baby was born.

The child was born at the Hartford Hospital on June 15, 1949, and the plaintiff was discharged on June 22, 1949. Two days later she went to Mr. Aaron's office and there signed the adoption papers, which were filed in the Probate Court three days later. The matter was then referred to the division of child welfare for investigation. Miss Dorothy Johnson of that department interviewed the plaintiff on July 15, 1949, a little over two weeks after the application had been filed in the Probate Court. The plaintiff then stated unequivocally that she did not want to give up her child and that she wanted to withdraw her consent. On July 20, 1949, Miss Johnson took the plaintiff to see the judge of probate and, two or three weeks later, to see an assistant in the office of the attorney general. The plaintiff was then advised to retain counsel, which she did, and on September 22, 1949, her written withdrawal of consent was filed in the Probate Court.

In the meantime there was considerable delay in obtaining a report from New York as to the suitability of the defendants. This was finally filed on January 30, 1950, and a hearing was assigned for February 23, 1950. Another delay was occasioned by the illness of Mr. Aaron, and the hearing was not held

until March 24, 1950. On May 5, 1950, the Court of Probate entered an interlocutory decree approving the adoption and this appeal was then taken.

As soon as the baby was able to leave the hospital it was delivered into the custody of the defendants, with whom it has been ever since.

These circumstances strongly indicate the soundness of the rule which permits a withdrawal of consent. During her pregnancy the plaintiff was subjected to very strong persuasion on the part of Dr. Weiner to have the child adopted. At this time the plaintiff was laboring under great emotional stress. She was entirely ignorant of such other means of meeting the situation as might have been available to her, and these means were not adequately explained to her. Dr. Weiner had two motives for desiring the adoption—she could satisfy the desires of her friends, the defendants, and she could get her own bill paid easily and surely. I do not mean to imply that Dr. Weiner exercised such duress as to render the plaintiff's consent void or voidable. But she undoubtedly took advantage of the situation to bring about an end which she desired and which she probably believed was for the best interests of the plaintiff and her child. The whole picture brings out clearly the undesirability of holding that a mother's consent given under such conditions must be regarded as final and conclusive.

It is true that the defendants have parted with money in reliance upon the plaintiff's agreement. In doing so they took their chances not only upon the withdrawal of the plaintiff's consent but upon many other contingencies which might have led the Probate Court to disapprove the adoption. It would hardly seem that the payment of this money should be held to estop the plaintiff from responding to one of the deepest and most admirable instincts of humankind. Furthermore, the defendants are not without a remedy to recover this money from the plaintiff. See 1 Am. Jur. 631, § 20.

Finally, it should be noted that the Probate Court rested its approval of the adoption upon considerations involving the welfare of the child. This it could not do provided, as I hold, that the plaintiff had the right to withdraw her consent. Consent of the mother of this child was necessary to give the Probate Court jurisdiction in this adoption proceeding. If that consent were given then the Probate Court could very properly have considered the welfare of the child as the paramount issue

in determining whether or not to approve the adoption. But once that consent was validly withdrawn the whole proceeding fell with it.

The appeal from the Court of Probate for the district of Hartford is sustained and the decree of that court approving the adoption agreement is set aside.