Commonwealth ex rel. Bosco, Appellant, *v.* Olson.

Argued April 15, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ. (DITHRICH, J., absent).

*Arthur D. Gatz, Jr.,* for appellant.

*Edward Goldberg,* with him *Emanuel Amdur,* for appellees.

OPINION BY HIRT, J., July 14, 1953:

On the eve of her marriage to her present husband, Paul Bosco, relatrix on November 15, 1951, surrendered the custody of her infant son to the defendants. When about ten months later they on demand refused to return the child to her, she brought this habeas corpus proceeding to regain its custody. The lower court, after full hearing, dismissed relatrix's petition for the writ. Ordinarily a mother is entitled to the custody of a child of tender years. The right however is not absolute but must yield to the best interests and permanent welfare of the child. *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 74 A. 2d 790; *Com. ex*

*rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 74 A. 2d 668. In our view from an independent examination of all of the evidence, the action of the lower court is supported by substantial reasons affecting the welfare of the child. Cf. *Com. ex rel. Keenan v. Thomas et ux.,* 151 Pa. Superior Ct. 131, 30 A. 2d 246. The order will be affirmed.

In view of the apparent success of the present marriage it is unfortunate that reference must be made to relatrix's moral lapses in the past. She was pregnant when she married her first husband James V. Marra in July 1947. They were divorced in March 1948. At the hearing in this case she testified that a daughter born to her on September 23, 1948, (now in her custody) was Marra's child. Subsequently, by stipulation filed, it was conceded that relatrix on July 16, 1948, had made a criminal information against one Frank Luvara charging him with fornication and bastardy as father of the same child, and in settlement of the charge she received $500 from Luvara. Notwithstanding the settlement, she subsequently brought a proceeding for the support of the child against Marra, which, after hearing, was dismissed on his denial of paternity and proof of the above facts. Early in 1949 relatrix became interested in one Robert Pengelly and went to Detroit with him and lived with him there for four or five months. She was pregnant when she subsequently married him in October 1949. Shortly after the marriage he was convicted of crime and was sentenced to a Federal penitentiary for a term of 14 years. He had a prior criminal record when he married the relatrix. She divorced him in 1951. He is the father of the child involved in this proceeding, a boy who was 2½ years old at the time of the hearing.

Louis Rosenberg a member of the Allegheny County Bar had a casual acquaintance with Paul Bosco from

using the facilities of a parking lot operated by him. Bosco was unwilling to assume the responsibility of supporting both of relatrix's children and in November, 1951, prior to his marriage, questioned Mr. Rosenberg about placing the child, here involved, for adoption. Judge SAMUEL A. WEISS had known the defendants as estimable people who wanted to take a child for adoption. And on learning of that fact Mr. Rosenberg in the spirit of helpfulness and not as relatrix's attorney arranged for a meeting on November 15, 1951, in Judge WEISS's chambers between her and the defendants. Relatrix there stated that she wanted to give the child "to a nice family" and after talking with the defendants indicated a willingness, then and there, to sign papers for the adoption of the child by them. At the judge's suggestion the matter of the adoption proceeding was deferred to an indefinite future time. Relatrix there turned the child over to the defendants. And all of the circumstances support the conclusion of the hearing judge "that at the time the child was placed with the defendants it was done so for the definite purpose of enabling the mother to embark on her third marriage venture unfettered by a child that had been burdensome through a stubborn skin infection and whose father was such as to be unable to aid in its support". Relatrix delivered the child to the defendants unconditionally, intending thereby to relinquish all rights to its custody in the future. It was tacitly understood although the matter was not discussed, that respondents would maintain the child entirely at their expense. This has been done. Relatrix did not attempt to see the child nor did she contact the defendants to inquire as to its welfare at any time prior to bringing this action, during the period of ten months after delivering the child to them.

A mother may forfeit her right to custody by unchaste or improper conduct detrimental to the welfare of the child. *Latney's Appeal*, 146 Pa. Superior Ct. 20, 21 A. 2d 521. The moral delinquencies of relatrix in the past question the permanency of her reform. Cf. *Com. ex rel. Shaak v. Shaak*, 171 Pa. Superior Ct. 122, 90 A. 2d 270; and *Com. ex rel. Settlemire v. Stephens et al.*, 127 Pa. Superior Ct. 188, 193 A. 80. Moreover, relatrix, as in *Oelberman Adoption Case*, supra, by word and conduct had evidenced "a settled purpose to forego all parental duties and relinquish all parental claims" to the child. Cf. also, *Com. ex rel. Harry v. Eastridge*, 172 Pa. Superior Ct. 49, 91 A. 2d 910. The defendants accepted the child with that understanding. We are in accord with the conclusions of the hearing judge, based upon his estimate of the weight of the testimony. He had the advantage, which we have not had, of seeing and hearing the parties and their witnesses. The respondents have given the child the best of care; the child was ill at the time of placement but is fully recovered and is now healthy and happy. That the defendants are proper parties to be entrusted with the future life of the child, and that their home in its physical aspects is adequate, have not been questioned. At the time of the hearing Alex Olson was 54 and his wife 37 years of age. While age sometimes may be an important factor (*Commonwealth ex rel. Burke v. Birch*, 169 Pa. Superior Ct. 537, 543, 83 A. 2d 426) we do not consider it controlling in this case.

In our view this record as a whole discloses convincingly that the best interests and permanent welfare of the child has been served by awarding its custody to the defendants.

Order affirmed.