206 Pa. Superior Ct. 415 (1965)
Commonwealth ex rel. Ruczynski et ux., Appellants,
v.
Powers.
Superior Court of Pennsylvania.
Argued June 21, 1965.
September 16, 1965.
*416 Before ERVIN, P.J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).
James J. McEldrew, for appellants.
Raymond L. McConemy, Jr., with him Thorn, McConemy & Ohrenstein, for appellees.
*417 OPINION BY HOFFMAN, J., September 16, 1965:
Robert Anthony Gunther was born out of wedlock to the wife-appellant, Renee Gunther Ruczynski, on May 20, 1960. He remained in the custody of the natural mother until October 27, 1962, when, at her request, he was placed by an intermediary in the custody of the appellees for adoption. The natural mother consented in writing to the adoption at that time. The child remained in appellees' custody until April 19, 1963  a period of less than six months  at which time, the natural mother requested the return of her son. Four months later, on August 16, 1963, she again surrendered her son to appellees. On December 25, 1963, she requested his return a second time, but this request was refused.
A petition for adoption was filed by appellees and granted by the lower court upon a theory of abandonment by the natural mother. On appeal, the Supreme Court of Pennsylvania vacated the decree of adoption because the evidence failed to establish, as required by statute, (1) any conduct on the part of the natural mother which evidenced a settled purpose to relinquish her claim to the child, and (2) any continuity of such conduct for a period of at least six months. Accordingly, the matter was remanded to the court below with instructions to determine the custody of the child.[1]
*418 Appellants then filed a petition for writ of habeas corpus to recover custody of the child. Following a hearing, the lower court dismissed appellants' petition and awarded custody to the appellees.
Appellants contend that one of the strongest presumptions of law is that a natural mother has a prima facie right to her children over any other person, and, ordinarily, should not be deprived of the custody of her child of tender years. See Commonwealth ex rel. Lovell v. Shaw, 202 Pa. Superior Ct. 339, 344, 195 A. 2d 878, 880 (1963). They further argue that the lower court overemphasized the natural mother's criminal record involving moral turpitude and failed to consider that she is now married and able to properly care for her child.
As our Supreme Court indicated when it remanded this case to the lower court,[2] in awarding the custody of a child, the court must be guided in its decision by the child's welfare and best interests. Commonwealth ex rel. Graham v. Graham, 367 Pa. 553, 559, 80 A. 2d 829, 832 (1951); Commonwealth ex rel. Shaak v. Shaak, 171 Pa. Superior Ct. 122, 126, 90 A. 2d 270, 272 (1952). Even the prima facie right of the mother to the custody of a child of tender years must yield to this consideration. Latney's Appeal, 146 Pa. Superior Ct. 20, 22, 21 A. 2d 521, 522 (1941).
This rule of law holds true whether the contest be between parents or between a parent and a third person. Commonwealth ex rel. Shaak v. Shaak, supra; Commonwealth ex rel. Shamenek v. Allen, 179 Pa. Superior Ct. 169, 175, 116 A. 2d 336, 339 (1955). In numerous cases, we have awarded custody of a child to someone other than the natural mother. See Commonwealth ex rel. Graham v. Graham, supra; Oelberman *419 Adoption Case, 167 Pa. Superior Ct. 407, 74 A. 2d 790 (1950); Commonwealth ex rel. Williams v. Price, 167 Pa. Superior Ct. 57, 74 A. 2d 668 (1950); Commonwealth ex rel. Shroad v. Smith, 180 Pa. Superior Ct. 445, 119 A. 2d 620 (1956).
We have often noted the importance of the trial judge in these cases. In Commonwealth ex rel. Shroad v. Smith, supra, we said at p. 450:
"Any experienced trial judge, while conducting a hearing which involves the custody of children, is observing every act of the parties, not only to appraise the truth of their testimony, but also to evaluate their fitness to have custody of the children. An appellate court lacks this opportunity to pass upon the ability and character of the parties. Com. ex rel. Hubbell v. Hubbell, 176 Pa. Superior Ct. 186, 193, 107 A. 2d 388 (1954).
"An appellate court is not free to nullify the fact-finding function of the hearing judge. The credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence and knowledge of the subject can best be determined by the judge before whom they appear. Com. ex rel. Harry v. Eastridge, 374 Pa. 172, 177, 97 A. 2d 350 (1953)."
Judge BROWN, in her long and distinguished career on the bench of the County Court of Philadelphia, has heard thousands of these cases. It is significant, therefore, that she had the advantage of seeing and hearing the parties at both the adoption and custody proceedings. In awarding custody to the appellees, Judge BROWN stated: "We have observed the parties and their demeanor on the witness stand. We regret that we have little or no confidence in the sincerity of the mother. Her actions in the past in her relationship to this child belie her protestations. Too readily and too quickly did she relinquish parental control of this child when it was inconvenient for her to keep its *420 custody. Even when the child was with her for brief periods, she would entrust the child's care to others."
Judge BROWN concluded: "We are well impressed with the character, good intentions and sincerity of purpose of the foster parents. The child surely has grown to love them, and has a strong feeling of belonging and security in their home. To his childish mind, home is with the foster parents with whom he has resided most of his young life. The foster parents have given good and loving care to the boy. Strong emotional bonds of affection, loyalty and love have already been firmly established between the child and the foster parents. The latter have given him the material comforts, security, good care, love and affection in a good home and wholesome environment. To disturb him now and place him with Petitioners, who no doubt would appear perfect strangers to him, might work irreparable psychological and emotional harm. We believe and find, therefore, that the best interests and welfare of the child would be promoted and best served by leaving him where he is."
We find nothing in the record which would cause us to upset the determination of the lower court. The record reflects that when appellees first took custody of the child, he was over two years of age. Yet, he could barely walk and could only speak his first name. He was emaciated, poorly clothed and showed signs of neglect. His emotional condition was described as frightened and detached. While with appellees, however, the child has thrived. The record further reflects that the child has now established strong emotional ties with both the appellees and their adopted daughter.
We agree with appellants' contention that the issue is the mother's present fitness and not the nature or extent of her past misconduct. However, her past conduct can certainly be examined and evaluated by the *421 courts in attempting to determine her probable future actions. See Commonwealth ex rel. Keer v. Cress, 194 Pa. Superior Ct. 529, 168 A. 2d 788 (1961).
Three times in his short life, this child has been subjected to the severe emotional experience of being shunted from one home to another because of his mother's vacillating conduct. We find no reason to expose him to the possibility of another such upheaval. While the intended relinquishment of the child by the natural mother is not binding on her, it is a matter to be taken into consideration; when it appears that his welfare and interest will best be served by his remaining with his foster parents who have reared him, it is of weight and importance. See Commonwealth ex rel. Settlemire v. Stephens, 127 Pa. Superior Ct. 188, 193 A. 80 (1937).
Order affirmed.
DISSENTING OPINION BY MONTGOMERY, J.:
I respectfully dissent because the majority has placed too little importance on the right of a natural mother to have custody of her child. The lower court made much of the fact that the child had benefited by the care of the foster parents over an extended period of time. However, it is noted that it was a relatively short time after the second placing of the child with the foster parents that the mother requested its return, i.e., from August 16, 1963, to December 25, 1963. The balance of said extended period following December 25, 1963, covered the period of litigation by which the mother was attempting to secure her child.
Commonwealth ex rel. Logue v. Logue, 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960), and the cases following it, in my opinion, compel the return of this child to its mother: viz., Commonwealth ex rel. O'Hey v. McCurdy, 196 Pa. Superior Ct. 79, 173 A. 2d 672 (1961); *422 Commonwealth ex rel. Lovell v. Shaw, 202 Pa. Superior Ct. 339, 195 A. 2d 878 (1963).
The mother, now married, is in a different situation than she was at the time she placed the child with appellees and she should have the opportunity of loving and caring for her child. Her husband, by joining in this proceeding, indicates his desire to aid in this effort.
The opinion of the Supreme Court written by Mr. Justice JONES in the adoption proceeding referred to in footnote I of the majority opinion clearly states that this child was not abandoned by its mother but that the record portrays a picture "of a mother, in the midst of many difficulties, some self-created, vacillating in her conduct; at times convinced that her circumstances were such that she could not continue to take care of the child and at other times evidencing a sincere desire to care for and support the child." In the light of such a record she should not be denied her child.
NOTES
[1] Gunther Adoption Case, 416 Pa. 237, 206 A. 2d 61 (1965). The Supreme Court concluded that: "The court below, understandingly, placed great stress upon its findings that the best interests of the child would be promoted by this adoption. The question of the best interests of a child is all important in custody cases, but, in adoption, the welfare of the child is to be considered only after it has been determined that the natural parent has abandoned the child and, by such abandonment, has severed the natural ties between a child and its parent. In the posture of the case at bar, in the absence of sufficient evidence to satisfy the statutory requirements for a severance both as to conduct and length of time and extinction of the ties between the natural mother and the child, the question of the best interests of the child is not material on the issue of adoption."
[2] See note 1, supra.