Com. ex rel. Stevens *v.* Shannon.

Argued December 12, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*J. Schneyer Clearfield,* for appellant.

*James F. Masterson,* and with him *Maurice Freedman* and *James P. McGranery,* for appellee.

Opinion by Stadtfeld, J., January 25, 1933:

This is a habeas corpus proceeding involving the custody of a minor boy, Douglass Shannon, aged eight years. The petition was filed by the maternal grandmother, Louise Stevens. The writ was directed against Nan Shannon who for eight months, was the second wife of the child's father, Patrick D. Shannon, now deceased.

The minor, Douglass Shannon, was born on May 5, 1924, in Philadelphia, Pa., of Patrick D. Shannon and Anna May Shannon, the daughter of the relator. The relator's daughter (the mother of Douglass Shannon) died on September 7, 1930, whereupon Patrick D. Shannon, the father and Douglass Shannon the grandchild, came to live with Louise Stevens, the relator. The son-in-law and the grandchild continued to live at the home of the relator until January 1, 1932, when the son-in-law again married, this time to the respondent, Nan Shannon. On January 1, 1932, the time of the remarriage, Patrick D. Shannon removed from the relator's home and took with him Douglass Shannon, the minor. There were no other children born of the marriage of the relator's daughter and Patrick D. Shannon. On August 12, 1932, Patrick D. Shannon died. After the death of Patrick D. Shannon, the relator requested the respondent to turn her grandchild over to her. This request was refused and thereupon, on August 22, 1932, a petition for writ of habeas corpus was filed by the grandmother, as relator, in the municipal court of Philadelphia County.

The hearing was had before Gable, J., on September 27, 1932. On September 30, 1932, an order was entered remanding the child to the custody of its stepmother, the respondent, for the period of six months; grandmother to take legal adoption of the child.

On October 21, 1932, a final order was entered, changing the order of September 30, 1932, to read

remanding the child into the custody of its stepmother; respondent to take up adoption of child within six months.

From these orders or decrees, this appeal has been taken by relator. Subsequently the trial judge filed an opinion wherein he states, without discussing the evidence that "the Court is of the opinion that the welfare of the child will be best promoted by allowing him to remain with his stepmother, the respondent, provided, however, that the respondent shall, within six months from the date when the matter was disposed of, to wit: September 30, 1932, legally adopt the child, so that there will be legal responsibility upon the said Nan Shannon for the support of the child."

As stated by this court in Commonwealth ex rel., v. Tweedy, 74 Pa. Superior Court, 577, 581, "The Act of July 11, 1917, P. L. 817, 12 P. S. Section 1874, requires this court to consider the testimony and make such order upon the merits of the case as to right and justice shall belong." To same effect, Commonwealth ex rel., Ganster v. McGee, et ux., 103 Pa. Superior Ct. 12 (1931).

The relator, the maternal grandmother, is a widow and has for seventeen years lived at No. 2540 S. Broad Street, Philadelphia, in a substantial and well located home. She is fifty-seven years of age, is in good health. She owns the home in which she lives and is financially able to maintain her grandchild. In this home is Clara Stevens, a single daughter of the relator, a graduate of the South Philadelphia High School for girls who attended Temple University for one year; also a grandchild, now in the fourth year of the South Philadelphia High School for girls, whose mother, a daughter of the relator, died some years ago. This grandchild was adopted in 1925 by the relator and has been maintained by the latter. The relator has a married daughter, Elizabeth Dunkel-

berger, who resides with her husband at Reading, Pa. The husband is an instructor of art in the Pennsylvania Museum of Industrial Art and at the Textile School, in Philadelphia. The Dunkelbergers have been married seven years and are without children. The relator as well as all the close kin of the grandchild are very fond of him, and there is no doubt he would have the natural affection of all of his blood relatives. The relator's home is highly regarded by her neighbors, several of whom came to the hearing. As stated by the trial judge during the hearing, as appears from the record, ''That she has a very fine home in a good neighborhood with ample accommodations for the care of the child is assumed from the investigation made by the probation officers and the testimony of the petitioner herself on that point. I doubt whether that will be questioned by the other side.'' Although the grandmother is of a different religious faith than was the father of the grandchild, the grandmother at all times has cooperated in the past to continue the child in the faith of the father.

The respondent is a woman of approximately forty years of age. She has one son by a previous marriage, who is twenty years of age but does not reside with the respondent. Since September, 1931, he has been living with a friend in Delaware County and is supporting himself. At that time, respondent rented her home in Highland Park and her son, according to her testimony, did not care to live in the city. She is apparently possessed of sufficient means to maintain the child. Her first husband was a private chauffeur and died on July 5, 1931. She met Mr. Shannon in November, 1931, two months after the death of his first wife, while she, respondent, was separated from her husband. She now lives at No. 2602 South 65th Street with her father who is seventy years of age. She intends to move with her father to Stone-

hurst, also a residential neighborhood. She is of the same religious persuasion as the grandchild and is willing to adopt him if awarded to her. She is apparently attached to the child.

During the hearing the grandchild was taken into the chambers of the trial judge and there questioned by the latter in the absence of the parties to this proceeding. He there expressed love for his stepmother and a dislike for his grandmother. He there made an unusual remark for a child of his age, stating "My dad told me that she (the grandmother) was mean to him and I always called up Nannie (respondent) to get married to my dad so I could get away from my grandmother."

There was apparently some estrangement between the relator and her son-in-law, now deceased, shortly after his marriage to respondent, when the relator asked him for the repayment of $500 which she had loaned to her daughter and the latter's husband. There also seemed to be no affection for the respondent on the part of the relator, the respondent having called at the relator's residence only once prior to her marriage to the son-in-law, when she was not received approvingly.

According to the testimony, relator and respondent each seems equally able to provide the material surroundings necessary for the maintenance and comfort of the child.

The guiding star for the court in coming to a conclusion in a case of this character, is the welfare of the child. To this the rights of parents and all other considerations are subordinate. Commonwealth ex rel., v. Daven, 298 Pa. 416; Commonwealth ex rel., v. Faxstein, 84 Pa. Superior Ct. 243; Commonwealth ex rel., v. Hoffman, 91 Pa. Superior Ct. 213; 46 Corpus Juris, 1235 Section 15 (2).

Under the Act of June 13, 1836, P. L. 539, Section

28, 62 P. S. Sec. 1952, discussed in the case of Horwitz v. Horwitz, 78 Superior Ct. 383 (1922) a legal responsibility rests upon the grandmother to maintain the grandchild, should the necessity arise.

As stated by Swartz, P. J., in the case of Commonwealth ex rel., v. Thomas, 33 Montgomery County 173 (1917), "Upon the death of the parents, the law casts on the grandparents, the duty of maintaining the grandchildren, if their necessities should require such support. It is also a principle of law that corelative to the duty of maintenance, is the right to the custody of minors to direct their education and to enjoy their society." The case cited was a contest between a grandmother and a stepmother and the court, in awarding the grandchild to the grandmother, said: "Even if all the other things were equal, we are of opinion that a preference should be given to these near blood relations over a stranger to the blood of the children, in determining their custody."

The child's preference, while a factor ordinarily, is not controlling. Even the preference expressed by a child must be based on good reasons, and the child's maturity and intelligence must be considered. Commonwealth ex rel., Weber v. Miller, 84 Pa. Superior Ct. 409; 12 R. C. L., page 1216, Sec. 34.

The fact that there is a difference between the religious faith of the relator and that of the grandchild should not be controlling, although it may be a factor under certain circumstances. Commonwealth ex rel., Weber v. Miller, Supra.; Commonwealth v. McClelland, 70 Pa. Superior Ct. 273; Commonwealth ex rel., Kelly v. Kelly, 83 Pa. Superior Ct. 17.

An important consideration in this case is that the respondent is comparatively a young woman, being only 40 years of age, and might remarry, and her attitude towards the child might change, thereby seriously affecting the status of the child.

564

Other things being equal, the grandparents or next of kin are entitled to the custody of the minor child because of their inherent common law rights as natural guardian which are superior to that of a mere stranger. "Guardianship by nature at common law, according to the early English authorities, was the right of the father, mother and next of kin, in the order named to the custody of the person of the heir apparent." 28 Corpus Juris 1059, citing Coke on Littleton page 88b, note 12. The principle governing in American jurisdictions is stated in 28 Corpus Juris, 1060 as follows: "In case of the death of both parents it has been held that the grandfather or the grandmother, when next of kin, becomes the guardian by nature, although some authorities assert that under such circumstances, there is no natural guardianship." This common law principle of natural guardianship is one designed to maintain the family structure, and should therefore be applied by the court where not inconsistent with the child's welfare. The rule has also been stated by a learned writer as follows: "On the death of the father, guardianship by nature passes to the mother, and, on her death, to the grandfather or grandmother or any other person who is next of kin. Prima facie, the natural guardian is entitled to the custody of the child; but there are exceptions to the rule resulting from the doctrine that the child's welfare must be considered in awarding his custody." Tiffany, Person's & Domestic Relations, 2nd Edition, page 316, Sec. 148.

The language of this court in Commonwealth ex rel., Ganster v. McGee et ux., supra, by our brother CUNNINGHAM, is most pertinent: "Our duty in reviewing such proceedings is prescribed by the Act of July 11, 1917, P. L. 817, which directs that we 'shall consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or

modification of the order appealed from, as to right and justice shall belong.' The case therefore falls within that difficult class of cases which demands of us the most careful, and indeed anxious, consideration; we are not reviewing a money judgment or one affecting the property rights of the parties but dealing with a situation in which the natural emotions of a parent and grandparents are factors and the ultimate welfare of the children is involved. We may not content ourselves with merely ascertaining whether there was evidence supporting the conclusions of the court below; in addition to considering the circumstances as they now exist, we must contemplate, as far as humanly possible, the probabilities of the future." The affection of a grandparent can safely be said to be no less in depth than parental affection which, as stated in 14 Ruling Case Law, page 271, par. 44, "is not only entitled to consideration as constituting a strong claim on behalf of the parents but as an element of priceless advantage to the infant......."

After a careful consideration of the testimony and the application of the principles hereinbefore stated, we are constrained to differ from the conclusion arrived at by the learned judge of the lower court and to award the grandchild to his grandmother, the relator.

The assignments of error are sustained, the orders of the lower court are reversed and it is ordered and decreed that the said Douglass Shannon, minor child of Anna Shannon and Patrick Douglass Shannon, her husband, both deceased, be delivered into the custody of his grandmother, Louise Stevens, the relator. Costs to be paid by appellee.