## Commonwealth ex rel. v. Perna

*Robert I. Cottom*, for relators.

*Edward G. Wink*, for respondent.

MAYS, P. J., January 20, 1950.—This is a habeas corpus proceeding, involving the custody of a minor boy, Gerald William Fizz, aged three and one-half years. The petition was filed by William M. Fizz and Eva G. Fizz, paternal grandparents. The writ was directed

against Michael Perna, who, for a little more than seven months, was the second husband of the child's mother, Marian Fields Perna. The minor was born April 18, 1946, of Gerald Walter Fizz, son of relators and Marian Fields Fizz. Relators' son (the father of Gerald William Fizz) died on June 1, 1947. After their marriage, Marian Fields and Michael Perna lived in an apartment with Gerald William Fizz. A son was born to them on May 15, 1949. On August 19, 1949, Marian Fields Perna was taken to the Berks County Tuberculosis Sanitarium and remained there until her death on November 29, 1949. After August 19, 1949, respondent took the child, Gerald William Fizz, and the baby of Marian Fields Perna to the home of his father at 833 Madison Avenue, Reading, Pa., and has kept Gerald William Fizz there until the present date.

After the death of the child's mother on November 29, 1949, relators requested respondent to turn their grandchild over to them. This request was refused and, thereupon, December 8, 1949, a petition for writ of habeas corpus was filed by the paternal grandparents as relators in this court.

Relators, the paternal grandparents, are man and wife, the husband aged 52 and the wife 48. They reside in a substantial and well-located home at 244 Walnut Street, Pottstown, Pa. The home has a dining room, kitchen, living room downstairs, the second floor has a bath room and two bedrooms, and the third floor has two bedrooms. It is located in a residential section. It has a large side and front yard. It is located next door to the St. Paul's Reformed Church. Directly across the street is a grade school and beside it is a high school. Living with them are a son, daughter and two grandchildren, the latter aged 11 years, and four months, respectively. The husband is employed at the Pennhurst State School. The wife, at present, is employed in Newbury's Department Store. She stated that if

she receives the custody of this child, she will discontinue doing this work.

Respondent lives with his father in a house, containing three bedrooms on the second floor and two on the third floor. There are eleven people living in this house. Respondent and his new-born son and Gerald William Fizz occupy one of the rooms. Of all the persons in the household, all are employed except the seven-month-old baby, Gerald William Fizz, and respondent's sister, who is 22 years of age. Respondent has a food delivery route. The maternal grandparents testified that they did not want the custody of Gerald William Fizz, however expressing the desire that respondent have his custody.

We recognize that we must be concerned with the welfare of this child. To this the rights of grandparents and stepfather and all other considerations are subordinate. We are satisfied that relators have a very fine home in a good neighborhood with very ample accommodations for the care of this child. I believe that they are very fond of this child and the hearing judge entertains no doubt but that they would bestow upon this child their natural affections and rear him in a proper environment. Except for the crowded conditions in respondent's home, we do not wish to be understood to say that his home is not a good one.

In Commonwealth ex rel. Stevens v. Shannon, 107 Pa. Superior Ct. 557, 564, Stadtfeld, J., said:

"Other things being equal, the grandparents or next of kin are entitled to the custody of the minor child because of their inherent common law rights as natural guardian which are superior to that of a mere stranger. 'Guardianship by nature at common law, according to the early English Authorities, was the right of the father, mother and next of kin, in the order named to the custody of the person of the heir apparent.' 28 Corpus Juris 1059, citing Coke on Littleton page 88b,

4

note 12. The principle governing in American jurisdictions is stated in 28 Corpus Juris, 1060 as follows: 'In case of the death of both parents it has been held that the grandfather or the grandmother, when next of kin, becomes the guardian by nature, although ∗some authorities assert that under such circumstances, there is no natural guardianship.' This common law principle of natural guardianship is one designed to maintain the family structure, and should therefore, be applied by the court where not inconsistent with the child's welfare. The rule has also been stated by a learned writer as follows: 'On the death of the father, guardianship by nature passes to the mother, and, on her death, to the grandfather or grandmother or any other person who is next of kin. Prima facie, the natural guardian is entitled to the custody of the child; but there are exceptions to the rule resulting from the doctrine that the child's welfare must be considered in awarding his custody.' Tiffany, Person's & Domestic Relations, 2nd Edition, p. 316, §148."

In disposing of a matter so difficult as this, we are truly mindful of our responsibility and looking to the future, concern ourselves about the ultimate welfare of the child. His maternal grandparents do not care to have the custody of the child. The paternal grandparents do. His both parents are deceased. He, the child, is entitled to the affection of those blood relations who express a desire to keep and maintain him. Stadtfeld, J., in Commonwealth ex rel. Stevens v. Shannon, supra, at p. 565, said:

"The affection of a grandparent can safely be said to be no less in depth than parental affection which, as stated in 14 Ruling Case Law, p. 271, par. 44, 'is not only entitled to consideration as constituting a strong claim on behalf of the parents but as an element of priceless advantage to the infant . . .' "

Relators have shown deep concern about the health and welfare of Gerald William Fizz. They have not been unmindful of the circumstances that his parents died of tuberculosis. They have, upon a number of occasions, expressed a desire to see the child, and received promises from respondent that he would bring the boy to their place. This did not come about. They, too, offered to take him to have an examination as to whether he was afflicted, and suggested to respondent that he have the child X-rayed, which he said he would do. Up to the time of the hearing this was not done, even though Dr. Clammer, who examined him, stated that there is a possibility that the boy may have tuberculosis, and he too suggested that he be X-rayed.

This child is entitled to receive from the National Service Life Insurance Company, monthly, a definite amount of money. The court asked one of the relators, "If you should get the child, do you want the money to support it?" and the answer was, "I would rather have it put away for the boy when he is grown up." This gives us the impression that these relators are willing to assume what is a moral, if no longer a legal obligation, to a grandchild, to support him and bestow upon him the affection of grandparents which, in most cases, is a blessing to any child.

Finally, we say, as did Stadtfeld, J., in Commonwealth ex rel. Stevens v. Shannon, supra, p. 563: "An important consideration in this case is that the respondent is a comparatively young" man "being only" 28 "years of age, and might remarry and" his "attitude toward the child might change, thereby seriously affecting the status of the child."

And now, to wit, it is ordered and decreed that the boy, Gerald William Fizz, be delivered into the custody of relators, William M. and Eva G. Fizz.