Commonwealth ex rel. Burke *v.* Birch, Appellant.

Argued July 18, 1951. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Daniel Krause*, with him *Emanuel Amdur, Walter A. Koegler* and *Krause & Boreman*, for appellants.

*George H. Ross*, with him *Roy T. Clunk*, for appellee.

Opinion by Rhodes, P. J., September 26, 1951:

Richard L. Burke, by this habeas corpus proceeding, seeks to secure from respondents the custody of

his five and one-half year old son. Respondents are the maternal grandparents with whom the mother, relator's wife, was living at the time of her death. The court below, while acknowledging respondents' fitness and devotion to the child, awarded custody to the relator. Respondents have appealed to this Court.

The court below, in its opinion, has made the following pertinent comparison of the parties: "While still married to Michael's mother, he [relator] had an affair with another woman who bore him a child and whom he later married (following the death of his first wife) in order to give the child a name. Then, while divorce proceedings were pending to dissolve the second marriage, he lived with still another girl, whom he married when the divorce was finally made absolute. . . . Mrs. Ellen Birch, the grandmother, is of impeccable character and her devotion to Michael is also completely undeviating and ever-continuing." Relator's claim to custody of the child would seem to be based solely on the fact that he is the father and thirty years of age, while the grandparents are considerably older.

Of course, in cases of this type, every court recognizes that the prime consideration is the best interest and welfare of the child, including his physical, intellectual, moral, and spiritual well-being. *Com. ex rel. Children's Aid Society v. Gard,* 162 Pa. Superior Ct. 415, 419, 58 A. 2d 73, affirmed 362 Pa. 85, 66 A. 2d 300; *Com. ex rel. Graham v. Graham,* 367 Pa. 553, 559, 80 A. 2d 829. Experience is the basis for the principle that a parent is prima facie entitled to custody. *Com. ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 562, 40 A. 2d 881. However, the parent's prima facie right to custody may be forfeited if convincing reasons appear that the best interest and permanent welfare of the child will be served by awarding custody to someone else. *Com. ex rel. Logsdon v. Logsdon,* 156 Pa. Superior Ct. 85, 87, 39 A. 2d 461. "An infant is the ward

of the state and the latter may take the custody of the child away from even its own parents when the welfare of the child so demands": *Com. ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 92, 66 A. 2d 300, 304.

In reviewing the proceedings as provided by the Act of July 11, 1917, P. L. 817, §1, 12 PS §1874, it is for us to "consider the testimony and make such order upon the merits of the case . . . as to right and justice shall belong." In coming to our conclusion, we are not unmindful that the court below had the opportunity of seeing and hearing the witnesses in the case.

Relator and Jeanne Birch, daughter of appellants, were married in August, 1943, at Billings, Montana. At the time he was on duty with the Air Force, and she was on leave from the Waves. The child, Michael James Burke, was born on December 21, 1945. Jeanne died on April 7, 1947, while she and Michael were living at the home of her parents, the appellants, in Allegheny County.

Relator admitted to an adulterous relationship with one Ida, his secretary, as a result of which a child, Timothy, was born in October, 1947. The chronology established, and relator acknowledged, that Timothy was conceived prior to the death of relator's first wife, Jeanne. Relator married Ida in August, 1947, to give the child Timothy a name and not because of any affection for his second wife. Relator separated from his second wife in November, 1947; and she subsequently procured a divorce from relator, which did not become final until February 1, 1951. Relator has manifested no interest in his son Timothy, and at the time of the hearing in the present proceeding he was under bond for the support of that child.

Relator married his third wife, Betty, on April 29, 1951, after the institution of the present habeas corpus proceeding. She was a former commercial airline stewardess, and for two years prior to her marriage to re-

lator she conducted an airline agency in New Jersey. Relator and Betty admitted that they lived together and posed as husband and wife for at least a year prior to their marriage.

Since his discharge from the service, relator has held at least eight different positions. He testified that since January, 1951, he has been employed as an executive in Seattle, Washington, with an airline company at a salary of $12,000 a year; and that since March 1, 1951, he has rented a six-room house in Seattle.

Relator admits his past conduct, but would have us assume that he has acquired a new moral, marital, and financial stability.

The child Michael has lived principally with his grandparents, the appellants. Michael's custodial history, however, is lacking in continuity. Some time after the death of Michael's mother in April, 1947, relator took Michael from appellants and placed him with relator's mother and brother in New Jersey. After nine months Michael was returned to appellants in Allegheny County, where he lived continuously for about two years, or until August, 1950. During this period, relator visited his son five or six times, but he made no contribution to the child's support. From August, 1950, until December, 1950, Michael was with relator and the girl Betty, who subsequently became the third Mrs. Burke, or with relator's mother in New Jersey. On December 21, 1950, Michael was returned to appellants and again brought to Pittsburgh. In February, 1951, Betty asked to take Michael for a proposed ten-day vacation in Seattle, Washington. Five weeks later the grandmother visited Betty in East Orange, New Jersey, when Betty, whose status had become known to the grandmother, refused to return the child after the agreed vacation. Then the grandmother took Michael from Betty and returned with him to Allegheny County. Relator brought the present action to obtain

custody of Michael in Allegheny County on April 3, 1951.

The grandfather, James W. Birch, is fifty-seven years of age and for the past eighteen years has worked for the United States Steel Corporation at Braddock, and prior thereto he worked for twelve years with the Westinghouse Electric Corporation. The grandmother, Ellen Birch, is fifty years of age. They own their home in Pitcairn, Allegheny County. Two grown sons do not live at home.

Our independent review of the record convinces us that the child's best interest will be served by awarding custody of the child to appellants. Relator's admitted moral lapses have been serious and recurrent. For over a year prior to their marriage, which took place subsequent to the filing of the present petition, relator and Betty admittedly lived as husband and wife. The fact that relator has been guilty of immoral conduct may not be conclusive against his right to custody, but where such conduct is so flagrant and persistent it is impossible to disregard it in considering the best interest of the child. *Com. ex rel. Kreiling v. Kreiling,* 156 Pa. Superior Ct. 526, 40 A. 2d 704; *Pyles v. Pyles,* 157 Pa. Superior Ct. 450, 43 A. 2d 651. Furthermore, the moral digression of relator's present wife, with whom the child would be spending its time if custody were awarded to relator, should not be viewed indifferently. *Com. ex rel. Trott v. Wilcox,* 118 Pa. Superior Ct. 363, 179 A. 808.

There are other considerations which indicate that the best interest of the child will be realized by awarding custody to appellants. Relator's home life and employment have not been stable. If past performance is any indication of the future, the probabilities are that relator cannot for the present offer the child as helpful an environment as that supplied by appellants. The financial ability of appellants to care for the child,

their home life, and their love and affection for the child are not questioned. Appellants have given the child a fine home and an excellent environment.

While age may sometimes be a determining factor, we do not consider it such in the present case. The life expectancy of appellants is sufficiently long that, before a custodial change is dictated by the circumstances, Michael may well reach maturity. The question of religion has been mentioned. Religion is an important matter and should be given consideration, but it does not determine the right to custody. *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 415, 74 A. 2d 790. If changed conditions adversely affect the child's welfare, further action may always be taken. *Com. ex rel. Swartzwelder v. Swartzwelder,* 162 Pa. Superior Ct. 366, 371, 57 A. 2d 610.

The order of the court below is reversed, and the record is remitted with direction to enter an order awarding the custody of the child, Michael James Burke, to the grandparents, James Birch and Ellen Birch, subject to the right of the father to visitation at proper and reasonable times within the jurisdiction of that court.