Commonwealth ex rel. Bachman, Appellant, *v.* Bradley, Appellant.

Argued March 19, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Arthur T. Gillespie,* with him *Linn H. Schantz,* for relator.

*Henry L. Snyder,* with him *Charles G. Helwig* and *Snyder, Wert & Wilcox,* for respondent.

OPINION BY RHODES, P. J., October 1, 1952:

This is a habeas corpus proceeding involving the custody of a girl aged thirteen and a half years, and a boy aged eleven and a half years, children of divorced parents. The proceeding was instituted by the father, relator, in which the mother is the respondent. Both parties have appealed from the order of the court below awarding general custody of the children to the respondent, with temporary custody to the relator as specified in the order. The order provided, inter alia, that relator be granted temporary custody on alternate week-ends, beginning Friday and ending Sunday evening; on one afternoon each week, commencing after school during the school term, and commencing at 1:30 in the afternoon during the summer, until eight or nine o'clock in the evening; for a period of two consecutive weeks in the summertime for vacation purposes; and that there be a suitable division of custody on Christmas Day and other holidays. Relator was also given the privilege of visiting the children if they were confined to respondent's home because of illness. The limited custody on the part of relator was granted subject to the restriction that no one shall be present with the children during these periods except relator and his mother.

Relator in his appeal objects only to the restriction placed on his custody, and contends that such restriction is impractical, unnecessary, and creates "a most unnatural [condition] . . . embarrassing to the father and perplexing to the children." Respondent in her appeal contends that the court below erred in enlarging the custodial privileges of relator as contained in a written agreement entered into by the parties in 1945, and asks that, if it is found that the circumstances warrant, further limitations of such custody be duly imposed.

Relator and respondent were married on May 7, 1937. They have two children who are the subjects of the present proceeding. Respondent obtained a divorce from relator on May 13, 1946. The parties had separated in January, 1944, and effected a reconciliation in July, 1944, for the benefit of the children. They finally separated in 1945, and on December 10, 1945, they entered into a written agreement making a property settlement and providing for the custody and support of the children. Relator, who is now forty-five years of age, has not remarried. Respondent married a William Bradley on April 13, 1948, but at the time of the hearing in the court below had permanently separated from him. She continues to reside with the children in a ten-room house owned by her, which had been the marital domicile of the parties. Relator is a business man and active in community affairs. That respondent is a devoted mother and a fit person to have custody of the children is not questioned.

Under the terms of the agreement of 1945, respondent retained general custody of the children. But relator was to have the children once during the week after school hours; one day during each week-end, on alternate Saturdays and Sundays; and during the summer months for a vacation not exceeding one week, providing the children were accompanied by someone approved by respondent. Under the agreement the relator generally exercised the privilege of having the children during the week and on week-ends. However, he did not take advantage of the opportunity to take the children for a summer vacation because he did not feel that he could provide a chaperone suitable to respondent.

Respondent refused a request by relator for more extended custody of the children, and on May 21, 1949, he petitioned the court below for a writ of habeas

corpus. When respondent was asked during the hearing why she objected to permitting relator to have the children over night, she stated: "Several reasons. I thought they were too young . . . I felt, staying away would be harmful to their physical and mental health, and . . . since Mr. Bachman admitted his homosexual tendencies to me, I always had that feeling that they would be exposed to his associates."

While relator denied respondent's statement, it is difficult to reconcile such a denial with his own testimony: "I told Mrs. Bradley, that I was as much homo-erotic as I was hetero-erotic. . . . I told her I was bi-erotic; that I was as much attracted to male friendships as I was to female friendships, . . ." There is much evidence in the record which would warrant the conclusion that relator's propensities were abnormal and his conduct immoral. A convicted sodomist, formerly in relator's employ, testified that he had relations with him on four occasions. There is also testimony of indecent assaults made by relator on three different persons, the last in 1948. Relator went on frequent business and pleasure trips, and letters written by and to him indicate that he made numerous casual acquaintances. The uninhibited tenor of these letters, which were introduced in evidence, suggests illicit relations with those of his own sex and affairs with the opposite sex; they reveal a decidedly erotic engrossment. However, there is no evidence that he allowed his propensities to be known to his children.

At the time of the first hearing on June 8, 1949, relator had moved into a newly constructed and pretentious home, where he resided with his aged mother and a male friend. His friend, financially able to afford his own apartment, had resided with relator, after moving from New York City, for about six months prior to the hearing. Although apparently qualified and cap-

able, he did not obtain employment. At a later hearing on June 11, 1951, this individual was still living with relator and had accepted employment from him. Relator testified in effect that he would not require his friend to leave in order to be permitted to have the children over night at his home. The court below in its opinion stated: ". . . realizing petitioner's sexual tendencies, the Court is reluctant to have any male companions living at the house when the children spend the night with the petitioner." The court recognized the possibilities inherent in granting relator limited custody of the children, but sought to protect them from any unwholesome influences by conditioning such custody on the absence of others during the children's visits.

In reviewing the proceedings as provided by the Act of July 11, 1917, P. L. 817, §1, 12 PS §1874, it is for us to "consider the testimony and make such order upon the merits of the case . . . as to right and justice shall belong." It is our duty to exercise our independent judgment as to the merits of the case. *Com. ex rel. Human v. Hyman,* 164 Pa. Superior Ct. 64, 67, 63 A. 2d 447. This controversy is between the father and the mother, who are now divorced, and consequently, in determining the custody of the children and the extent thereof, we must consider the fitness of the parent as well as the best interests and permanent welfare of the children. Act of June 26, 1895, P. L. 316, §2, 48 PS §92; *Com. ex rel. Swartzwelder v. Swartzwelder,* 162 Pa. Superior Ct. 366, 368, 57 A. 2d 610.

Throughout this proceeding relator has contended that evidence concerning his sexual tendencies and conduct should not have been received or considered, since, at the time the parties entered into the 1945 agreement giving limited custody to him, respondent was aware of his tendencies. He further argues that a relevant

consideration is his record of several years limited custody under the 1945 agreement during which no untoward incidents involving the children have occurred. But the absence of harmful influences in the past does not eliminate the probabilities of the future.

Custody of children is not a property right of a parent, and an agreement as to the custody of a child is voidable and may be set aside in the best interest of the child. *Com. ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 92, 93, 66 A. 2d 300; *In re: Minor Children of Rosenthal,* 103 Pa. Superior Ct. 27, 33, 157 A. 342. As we have so frequently said, in cases of this type, the prime consideration is the best interest and welfare of the child, including his physical, intellectual, moral and spiritual well-being (*Com. ex rel. Burke v. Birch,* 169 Pa. Superior Ct. 537, 539, 83 A. 2d 426); and that minor children, being wards of the state, may be taken from their parents when their welfare so requires (*Com. ex rel. Children's Aid Society v. Gard,* supra, 362 Pa. 85, 92, 66 A. 2d 300).

We think the cumulative weight of the evidence is to the effect that the children in the custody of relator may be exposed to improper conditions and undesirable influences. We are not unmindful that normally both parents should see their children, and that estrangement of parent and child should be avoided whenever possible. *Com. ex rel. Timmons v. Timmons,* 161 Pa. Superior Ct. 174, 176, 54 A. 2d 75. But, under the circumstances, it is our conclusion that full responsibility for the care of these children should devolve upon respondent who is admittedly a proper person to perform this parental duty. Therefore, the custody of the children shall be committed to the respondent, and she may grant the relator such limited visitation as she deems to be in the best interests of the children.

Relator's appeal to No. 174, October Term, 1950, is dismissed. Respondent's appeal to No. 129, October Term, 1950, is sustained. The order of the court below granting temporary custody of the children to relator is reversed, and the record is remitted with direction to enter an order awarding exclusive custody of the children, Janet Louise Bachman and John Kress Bachman, to the mother, Catherine K. Bradley.