## Shaw Adoption

*Lawrence E. MacElree,* of *MacElree & Platt,* with him *John O. Platt, Jr.,* and *James F. Foxall,* for petitioners.

*Robert S. Gawthrop, Jr.,* of *Gawthrop & Gawthrop,* with him *Fred T. Cadmus, 3rd,* for Robert H. Shaw.

HARVEY, J., February 18, 1954. — Aloysius E. Wagner and Dorothy Mae Wagner, his wife, have petitioned this court for a decree of adoption by them of Wendy Louise Shaw.

At the hearing in open court fixed pursuant to law, the adopting parents and the person proposed to be adopted and the father of the latter, who is the surviv-

ing natural parent, were present. The facts and statements set forth in the petition have been confirmed by the testimony taken under oath, and the court has been fully informed as to the desirability of the proposed adoption.

The following is a recital at length of the

### Facts

The natural mother of the child, Clara Belle Fisher Shaw, a sister of the wife petitioner, died December 27, 1953, in her twenty-second year of age, as a result of an automobile collision. She was of the Roman Catholic faith. The natural father of the child is Philip H. Shaw, now a resident of the Borough of West Chester, this county, of the age of 24 years.

The natural parents lived together unmarried for a year. They then separated for a period of two or three months and married on February 7, 1953. The natural father entered into the marriage because of threats of criminal prosecution and of the pregnancy by him of the mother. Immediately after the marriage, the husband left his wife at her home in West Chester and went to his residence in the same borough.

On February 21, 1953, pursuant to a stipulation of the parties dated the thirteenth of that month, the court of quarter sessions of this county entered an order of support for the wife against the husband. He made one payment in compliance therewith and then went to live in Florida. He has never otherwise complied with the order or contributed to the support of his wife.

There he instituted an action for annulment of the marriage, averring, inter alia, in the complaint that he was not the father of the child. The child was born on February 25, 1953, at the Memorial Hospital, West Chester. The father has never contributed nor offered to contribute to the support of his child. He has never communicated with the mother or any of her next of

kin about the child. He had not seen it, until the day of the hearing in this matter, when he was present and testified. At that time, while affirming his parentage, he did not evidence any feeling for or interest in the child or its present or future welfare. We have no doubt that he abandoned the child at its birth and presently persists in that abandonment by evidencing a settled purpose of relinquishing his parental claim to the child and of failing to perform his parental duties.

Upon the birth of the child, the mother and the baby lived at 144 West Union Street, West Chester. Thereafter they moved to a rented apartment on Wollerton Street in that borough. They then lived with an unmarried sister of the mother, Betty Jane Fisher, in that place for a period of two or three weeks. Following that she and the child went to visit petitioners at their home in Baltimore, Md., where she stayed from about November 1, 1953, until about December 1, 1953, when they went to visit another sister, Bertha Marie O'Connell, at Wilmington, Del., and where they were living at the time of the mother's death.

At the time the mother and her child left West Chester as aforesaid, the former was without funds and financially unable to continue to rent the apartment where she had lived, and was in poor health. The few household goods and personal belongings she left stored at the apartment house, where they remained (with the exception of a baby coach and other baby things which she got in the meanwhile) until January 1954, when they were obtained by petitioners. Her visits to the homes of her sisters as aforesaid were made with her purpose of temporary stay only and with intention to return to West Chester when she had sufficiently regained her health to earn a living and make a home for herself and her baby.

After the automobile collision resulting in the mother's death, and such injuries to the sister, Bertha Marie O'Connell, as to require her hospitalization, and at which time the baby was in charge of a baby-sitter at the latter's home, petitioners took the baby to their home in Baltimore, Md. There was no other place the baby could be taken care of among its relatives.

Since January 2, 1954, the child has been living with petitioners. As will be hereinafter noted in our discussion, we conclude as matter of fact and law that the child is now a resident of the Borough of West Chester, this county.

Petitioners are of the Roman Catholic faith, each being about 31 years of age. They own their home at 2604 Lehman Street, in the City of Baltimore, Md. It is a commodius residence sufficient to accommodate petitioners' family and the child they seek to adopt. The child will not be without other young children—there is a daughter, seven years of age and a son, three years. The home is within a few blocks of a Roman Catholic parochial school and church. Although the child has not yet been baptized, it will be raised in the faith of its mother. Husband petitioner is a wood tool-maker employed at Glenn L. Martin Company, earning an average of $78.04 per week "take home pay".

Under all the circumstances, the desirability of the adoption is beyond question to the welfare and in the best interests of the child.

The adopting parents wish the child to be known as Wendy Louise Wagner.

### Discussion

At argument, the natural father raised the question of the sufficiency of the evidence to sustain our finding that he has abandoned his child. Abandonment is an ultimate conclusion of fact deduced or inferred

by reasoning from established facts. It imports any conduct on the part of the parent which evidences a settled purpose to refuse or fail to perform all parental duties and to relinquish all parental claim, persisted in more than six months during which period there was opportunity to terminate the abandonment and retrieve the parental right to the child: Ashton Adoption Case, 374 Pa. 185. A mere review of the underlying facts in the case at bar shows that the ultimate conclusion of abandonment is the only reasonable conclusion.

The father stresses his contention that this court has no jurisdiction because the child is not a resident of this county. Section 1 of the Act of April 4, 1925, P. L. 127, as amended, confers jurisdiction upon the orphans' court "of the county in which the person proposed to be adopted is a resident. . . ." A resident of the county within the meaning of this provision should be construed to mean one who has either a permanent or temporary residence in the county: Brown's Adoption, 25 Pa. Superior Ct. 259.

The domicile of an infant is established by the acts and intention of the one who is entitled to the custody and control thereof. This doctrine means no more ordinarily than that the residence of the infant is that of its father, mother, or other natural guardian.

"Guardianship by nature at common law, according to the early English authorities, was the right of the father, mother and next of kin, in the order named to the custody of the person of the heir apparent . . .": Commonwealth ex rel. Stevens v. Shannon, 107 Pa. Superior Ct. 557, 564.

"Unless it is otherwise provided by statute, the father or in the case of his decease, the mother of an infant is its guardian by nature. And where the father abandons his minor child, the mother becomes the natural guardian": 28 C. J. 1059 Guardian and Ward.

It will be noted also that the definition of abandonment by the Act of 1953 relating to adoption comprehends in terms an essential element of relinquishment of parental claim.

Applying these rules of law, when the father here abandoned his child he relinquished his right to its custody and to establish its residence. Thereafter, the mother lawfully established its permanent residence as that of her own at West Chester, this county. That domicile of origin must be presumed to continue until another sole domicile has been acquired by actual residence coupled with the intention of abandoning the domicile of origin. This change must be animo et facto, and the burden of proof is on the party who asserts the change: Price v. Price, 156 Pa. 617. Therefore, when the mother gave up her living quarters in this county because she could not maintain herself and her child and went to live temporarily with her sisters elsewhere until she could regain her health and return to this county and obtain employment to maintain herself and her child, her domicile and permanent residence and that of the child, under the law of adoption, continued to be in this county. After her death, the domicile and that place of permanent residence of the child could not have been changed, and another acquired, by any person other than a natural guardian who had not abandoned right to the custody of the child. This change has never occurred. It follows that the permanent residence of the child as the person proposed to be adopted is in this county and that this court has jurisdiction to entertain the petition and decree the adoption.

### Decree

And now, February 18, 1954, this matter having come on to be heard and the court being satisfied that the person proposed to be adopted is related by blood or marriage to petitioners, that the statements made

in the petition are true, that the welfare of the person proposed to be adopted will be promoted, and that all the requirements of the Act of April 4, 1925, P. L. 127, as last amended August 26, 1953, P. L. 1411, 1 PS §§1-4, have been complied with, it is ordered, adjudged and decreed that the person proposed to be adopted, to wit, Wendy Louise Shaw, shall have all the rights of a child and heir of the adopting parents, to wit, Aloysius E. Wagner and Dorothy Mae Wagner, his wife, and be subject to the duties of such child; and further, the said person proposed to be adopted shall assume the name of the said adopting parents and the given names as follows, to wit, Wendy Louise Wagner.