Commonwealth ex rel. Donie *v.* Ferree, Appellant.

Argued April 13, 1954. Before HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Gilbert E. Long,* for appellant.

*Herman W. Green,* for appellee.

OPINION BY WRIGHT, J., July 13, 1954:

This is a habeas corpus proceeding involving the custody of a five year old child. The writ issued at the instance of the paternal grandmother, and was directed against foster parents with whom the mother had placed the child, and who have reared and cared for it exclusively since it was two years old. The lower court awarded custody to the grandmother, and this appeal followed.

George Edward Donie and Ruth Evelyn Bright were married in 1938. Their son, William Donie, the subject of this proceeding, was born on December 31, 1948. There were two older children, Edna and George. The parents last resided together in Hubbard, Ohio. On August 19, 1949, the father was committed to Massillon State Hospital, where he is still an inmate. He is suffering from a mental disorder known as schizophrenia. In May 1950, the mother disposed of the home in Hubbard and went to live with her mother in the village of Castlewood, Lawrence County, Pennsylvania. In October of that year, the older boy, George, was placed in Toner Institute and is still there. Edna remained with her mother for a time, then went

with various other relatives and is presently living with a paternal uncle and his wife, Eugene and Margaret Ann Donie of Youngstown, Ohio. On January 29, 1951, the mother placed William with Lawrence E. and Edna M. Ferree of New Castle, Pennsylvania. She executed a written consent to adoption,[1] and the Ferrees instituted a proceeding to adopt William. While the record in that proceeding is not before us, the petition was apparently dismissed because the father had not consented.

In his opinion, the hearing judge stated, "The fitness of the defendants, who sought the child, is unquestioned. They are individuals of fine character, enjoying an excellent reputation and have formed a deep attachment for the youngster as he undoubtedly holds for them". However, relying solely upon a statement[2] by Judge STADTFELD in *Commonwealth ex rel. Stevens v. Shannon*, 107 Pa. Superior Ct. 557, 164 A. 352, his conclusion was as follows: "The Court, after hearing the testimony, felt satisfied that *the welfare of the minor would not be endangered* were its custody to be given to the paternal Grandmother" (italics supplied). Our consideration of the testimony,[3] in the light of the applicable legal principles, brings us to a different result, namely, that the best interests of the child require that he remain in the custody of appellants.

---

[1] The mother, who now lives in Florida, petitioned to intervene in the present proceeding. Her purpose was to insist that the Ferrees be permitted to keep William, otherwise that the child be awarded to her. We express no opinion as to the action of the lower court in refusing intervention, since it is not questioned in this appeal.

[2] "Other things being equal, the grandparents or next of kin are entitled to the custody of the minor child because of their inherent common law rights as natural guardian which are superior to that of a mere stranger."

[3] See the Act of July 11, 1917, P. L. 817, 12 P.S. 1874.

In a proceeding of this nature, the governing criterion is the welfare of the child involved: *Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437. This was the principle actually applied in the *Shannon* case, wherein it was stated: "The guiding star for the court in coming to a conclusion in a case of this character, is the welfare of the child. To this the rights of parents and all other considerations are subordinate". The language relied upon by the lower court was influenced by the Act of June 13, 1836, P. L. 539, which provided that, if a child's parents were deceased, the grandparents were responsible for its support.[4] In *Rumsey's Case,* 135 Pa. Superior Ct. 515, 7 A. 2d 43, both of the child's parents were deceased, and we awarded custody to the stepfather as against grandparents. Judge HIRT, said, "If the minor were destitute the law would cast upon the grandparents the duty of his maintenance and the correlative right to custody would follow the duty to maintain: Com. ex rel. Stevens v. Shannon, 107 Pa. Superior Ct. 557, 164 A. 352. But the child is being maintained without charge upon his estate and the grandparents are not seeking custody because of any duty imposed upon them by law . . . To remove the child from a home, with all of its advantages, in which he has lived for years, and from the wholesome environment to which he has made a complete adjustment, could not be done in the interests of the ·child". In *Commonwealth ex rel. Barnett v. Currie,* 165 Pa. Superior Ct. 477, 69 A. 2d 154, decided after the responsibility of grandparents for support had been eliminated,[5] the child's parents were both deceased. The

---

[4] Repealed by the Act of June 24, 1937, P. L. 2017, but supplied in pertinent part by the Support Law of 1937, P. L. 2045.

[5] Act of May 23, 1945, P. L. 864, 62 P.S. 1973.

lower court awarded custody to the stepmother as against the maternal grandmother. In affirming, we distinguished the *Shannon* case, and rejected appellant's contention that she had an inherent common law right as natural guardian which was superior to that of a mere stranger.

Helen Euphemia Donie, is a widow some seventy years of age. She lives in a single room in a private house in Youngstown, Ohio, and is regularly employed. She admittedly does not have facilities to care for William herself. Her avowed intention is to place the child in the home of her son Eugene, although she did not feel that Eugene was financially able without "some help from the rest of us". Eugene lives with his wife and three small children in a house with four and one-half rooms, but testified that he is in the process of adding two more bedrooms. As previously set forth, William's sister also lives in this home. While related by blood, Eugene is not a party to this proceeding, and is a complete stranger to William. He evidenced no prior interest in the child, and has not seen it since the baptismal ceremony. As a matter of fact, the grandmother has not maintained contact with the child, having seen it last in December, 1951. The child never formed a part of her household, as was the situation for a period of sixteen months in the *Shannon* case. It clearly appears from the testimony that the grandmother's paramount purpose is to prevent William from being reared in a different religious faith. This is not a determining factor: *Commonwealth ex rel. Kelley v. Kelley,* 83 Pa. Superior Ct. 17. Religion is an important matter and should be given consideration, but it does not determine the right to custody: *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 74 A. 2d 790. As was said by President Judge RHODES in that case, "Unquestionably, the child will be given

religious training by respondents, and its home will not be devoid of a religious atmosphere". And see *Commonwealth ex rel. Burke v. Birch,* 169 Pa. Superior Ct. 537, 83 A. 2d 426. A secondary reason advanced by the grandmother was "the hope that the natural father will some day recover from his mental illness and have the comfort of his own son". However, custody of children is not a property right: *Commonwealth ex rel. Bachman v. Bradley,* 171 Pa. Superior Ct. 587, 91 A. 2d 379.

Lawrence and Edna Ferree are each forty-four years of age and have one child, a daughter of nineteen. Mr. Ferree has steady employment with a local feed company. They are concededly proper persons to have the child, and the court so found.[6] Counsel for appellee argues that William would be better off "in a home of youthful caretakers rather than with appellants who are of middle age". As authority for this proposition he cites *Commonwealth ex rel. Barnett v. Currie,* supra, 165 Pa. Superior Ct. 477, 69 A. 2d 154. However, as pointed out previously, the *Currie* case does not support appellee's position. We cannot subscribe to the proposition that parents who have reached the age of forty-four are for that reason less capable of properly caring for a five year old child. In our opinion it is for William's best interests that he remain with the only persons with whom he has ever had any real family relationship. In *Davies Adoption Case,* 353 Pa. 579, 46 A. 2d 252, which involved a four year old child Mr. Justice JONES said, "The emotional disturbance to a child that would threaten from its being removed summarily and permanently from fa-

---

[6] We are not empowered to nullify the fact-finding function of the hearing judge: *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350.

miliar and agreeable surroundings and associations, incident to the only parental control and supervision it has ever known, could have a very harmful effect on the child's whole life. Fortunately, the law's regard for a child's welfare does not admit of any such injury or harm being done it". See also *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 66 A. 2d 300, and *Commonwealth ex rel. Oliver v. Oliver,* 165 Pa. Superior Ct. 593, 69 A. 2d 445.

The three other cases cited by counsel for appellee are not controlling. In *Commonwealth ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 562, 25 A. 2d 855, the controversy was between parents. In both *Commonwealth ex rel. Reese v. Melors,* 152 Pa. Superior Ct. 596, 33 A. 2d 516, and *Commonwealth ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 40 A. 2d 881, the proceeding was instituted by the child's father. In each case cited, as in every case on the subject, the determining factor was the permanent welfare of the child and its best interests. That is the test we have applied in the case at bar.

The order of the lower court is reversed at appellee's cost, and it is ordered and decreed that William Donie remain in the custody of Lawrence E. and Edna M. Ferree.