Jasen, J. (dissenting).
Ronald Di Rocco and Marge Starr Di Rocco were married in 1962 and had two children; one born in 1963 and the other in 1966. The. marriage was troubled and at one time the Di Roccos separated for about a year. They later reconciled, but their marital discord continued. Their financial status deteriorated, and in 1966 Ronald filed for bankruptcy. Then, tragically, on October 9, 1966, Ronald shot and killed his wife and committed suicide.
*1013 This .proceeding, in the nature of habeas corpus, was brought to determine who should receive custody of the two infant children. The parties are Anthony De Boceo (brother of the late Ronald Di Boceo) and his wife, Bernice, and Bruce J. Starr (brother of the late Marge Starr Di Boceo) and his wife, Edith.
The hearing on the petition at Special Term dealt mainly with the fitness of the two contesting couples and basically established that the De Boceos live in Ossining (the scene of the tragedy), have no children of their own and are Roman Catholic. The Starrs live in North Grafton, Massachusetts, have one child, worked with children as camp counsellors, and are Episcopalians. At the hearing Bruce Starr testified that he would rear these infants as members of the Roman Catholic faith, if the court so directed.
In awarding custody of the children to the Starrs, Special Term noted in part:
“ [T]he court finds that the best interests of the infants would be served by placing them with petitioners Starr. Not only was the court most favorably impressed with them when they appeared before the court, but the court finds that, they are of a temperament to best care for the children. They have the experience, that is demonstratd with their present child, they have a home to accommodate the children now, and in placing custody with them, they will be removed from the locale of the tragedy which befell their parents, and thus, in the future, spared possible embarrassment and degradation.
* * *
“ The court is mindful of the difficulties regarding visitation by the De Boceo family with the children occasioned by the removal of the children from the State of New York. However, the court is convinced that the best interests of the children will be served by their removal from the area in which the tragedy befell their parents.” Relying upon section 32 of article VI of the New York State Constitution[1], the Appellate Division reversed on the law and *1014 the facts, the majority stating in part: “ Here there is no * # * compelling reason to avoid the constitutional mandate. There are available able and willing persons, blood relatives of the children, who profess the same religious faith as that of the children and against whom no cause for rejection exists.”
The principal question on this appeal is whether section 32 of article VI of the New York State Constitution compels the placement of a child with persons of the same religious faith as that of the child.
I am of the opinion that it does not. The words “ when practicable ” in the constitutional provision remove the absolute requirement that a child be placed with persons of the same religious faith as that of the child and grant the court discretion in exceptional situations to approve as custodians persons of a faith different from the child’s.
In Matter of Maxwell (4 N Y 2d 429), we had occasion to pass on the construction of the phrase “ when practicable ”. There, a Canadian woman who had previously had five of six children taken away from her by the Canadian government because she was an unfit mother, came to Buffalo to give birth to a baby which had been sired by her paramour. Before the birth, the mother indicated she wished to put the child up for adoption. After the child was born, the mother signed an affidavit in which she consented to the adoption of her child and stated that she embraced no religious faith. The child was taken by a Presbyterian couple and about a year later, at the adoption proceedings, the mother returned demanding that the child be placed with persons of the Roman Catholic faith..
In discussing section 373 of the Social Welfare Law, which provides that “ in granting orders of adoption of children, the courts shall, when practicable, * * * give custody * * * only to * * * persons of the same religious faith as that of the child” (emphasis supplied), the court noted that the term ‘1 when practicable ” is of broad content, and designed to allow the Trial Judge discretion to approve as adoptive parents persons of a faith different from the child’s in exceptional situations. (4 N Y 2d, at p. 434.)
I consider the tragic murder-suicide of the parents to constitute an exceptional situation which compels the Trial Judge to look beyond the religious requirement and award custody to the *1015 Starrs who live in Massachusetts, a considerable distance from the scene of the tragedy.
In Commonwealth ex rel. Kuntz v. Stackhouse (176 Pa. Super. Ct. 361), custody of a young girl whose parents had been savagely murdered was at issue. The applicable statute did not contain a “ when practicable ” clause, but I believe the observations of the court are pertinent to the case at bar: ‘ ‘ Fortunately because of her infancy, Patricia will have no memory of the terrible incident. However, others in the locality will remember. It is the common experience of mankind that however kind, solicitous and sympathetic the attitude of one’s neighbors may be, if it serves to remind one of a horrible tragedy in family background, it is to be avoided if at all possible. Here Patricia, if she grows up in Pennsylvania, will be hundreds of miles away from the scene of the crime. The possibility of ever-present reminder will be remote.” (176 Pa. Super Ct., at p. 369.)
As mentioned above, the Appellate Division awarded custody to the De Boccos because they were of the same religion as the children and because no cause for rejection existed against them. I submit that the fact that the tragedy took place in Ossining is a cause for rejection of the De Boccos who continue to live there. However, if the Appellate Division majority intended that cause for rejection must be found in the personal character of the De Boccos to warrant awarding custody to the Starrs, I believe they were mistaken. Such an interpretation of section 32 of article VI would require awarding custody to persons of the same religion as the children in all cases, unless the prospective custodians were total social and moral misfits. Such a view constitutes a blatant disregard for the welfare of the child for purely religious reasons and might well be considered to violate the First Amendment to the Constitution of the United States (see Ramsey, The Legal Imputation of Beligion to an Infant in Adoption Proceedings, 34 N. Y. U. L. Bev. 649 [1959]; Pfeifer, Church, State and Freedom, pp. 708-714 [Boston, 1967]).
Accordingly, I would reverse and award custody of the children to the Starrs with right of reasonable visitations to the De Boccos.
Order affirmed, etc.

. Section 32 of article VI provides:
“ When any court having jurisdiction over a child shall commit it or remand it to an institution or agency or place it in the custody of any person by parole, placing out, adoption or guardianship, the child shall be committed or remanded or placed, when practicable, in an institution or agency governed by persons, or in the custody of a person, of the same religious persuasion as the child.”